EXHIBIT 2

Volume I
Pages: 1-32
Exhibits: 0

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

PROBATE AND FAMILY
COURT DEPARTMENT
OF THE TRIAL COURT

*******************************

NORTHERN REGION ON BEHALF OF &ast;
AMANDA CHRISTINE KAELBLEIN &ast;
　　　Plaintiff &ast;
　　　　　　　&ast;
v. &ast;　　DOCKET NUMBER MI22W1174WD
　　　　　　　&ast;
MICHAEL SEAN SPEIGHT &ast;
　　　Defendant &ast;
*******************************

HEARING - VIA ZOOM
BEFORE THE HONORABLE KATHRYN M. PHELAN-BROWN

APPEARANCES:
For the Plaintiff:
48 Richardson Road
Melrose, Massachusetts  02176
By:  Amanda Christine Kaelblein, Pro Se

Department of Revenue
100 Sylvan Road
Woburn, Massachusetts  01801
By:  Eric G. Stephan, Esq.

For the Defendant:
46 1531 N. Shore Road
Derry, New Hampshire  03038
By:  Michael Sean Speight, Pro Se

Woburn, Massachusetts
Courtroom - Via Zoom
November 3, 2022

Recording produced by digital audio recording system. Transcript produced by Approved Court Transcriber, Donna Holmes Dominguez

| 2

## I N D E X

**WITNESS**

| | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| None - Hearing | | | | |

| 3

1

## PROCEEDINGS

2          (Court called to order.)

3          THE CLERK:  We're on the record, Docket Number MI22W1174,

4    Amanda Kaelblein v. Michael Speight.

5          THE COURT:  All right.  It's now 10:49 a.m. on Thursday,

6    November 3 of the year 2022.  This is Judge Phelan.  I am a

7    Massachusetts Probate and Family Court Judge, and today I'm

8    hearing this Massachusetts Department of Revenue Child Support

9    case, on my computer screen using zoom.  On my screen, I see a

10   name.  It says Amanda Kaelblein, is that you, Amanda?

11         MS. KAELBLEIN:  It is, yes.

12         THE COURT:  Is it all right if I call you Amanda during the

13   hearing?

14         MS. KAELBLEIN:  Yes.

15         THE COURT:  All right.  And another name I see on my

16   screen, it says Michael Speight.  Is that you, Michael?

17         MR. SPEIGHT:  Yes, sir.

18         THE COURT:  Is it all right if I call you Michael today

19   during the hearing?

20         MR. SPEIGHT:  Yes, sir.

21         THE COURT:  All right.  And the other person who's with us,

22   I also see his name on the screen.  This is Attorney Stephan.

23   He is a lawyer, but he does not work for me or the Judges.  He

24   does work for the Massachusetts Department of Revenue Child

25   Support Office.  So what we're going to do here before Amanda,

Michael and I talk back and forth about what the right amount of child support should be, I'm going to ask Attorney Stephan to first -- information about this case.  Attorney Stephan, go ahead.

MR. STEPHAN:  Good morning, Your Honor.  Before you today is a support complaint filed by the Department seeking support for the party's five year old child.  The Department conferenced the case this morning and the defendant refused to submit a financial statement.  And I was told he was quite abusive to the DOR worker who tried to conference the case with the parties. As a result of him having failed to provide us with his financial statement, we used the wage information we have for the defendant from his employer for the last quarter, and that results in a weekly gross average of around $1,100.  And the resulting guidelines amount, Judge, is $228 based on his wage reported from his employer.  The Department is asking that a support judgment enter today for $228 a week.

THE COURT:  Well, there are a couple of pieces of information I still need.

MR. SPEIGHT:  Your Honor, Your Honor, Your Honor -- Your Honor, can I --

THE COURT:  Michael, Michael, Michael, Michael, just hold on a second.

Attorney Stephan, there's some information I need.  Number one, what was the date of service on Michael?

1    MR. STEPHAN:  August 19th, Your Honor.

2    THE COURT:  All right.  And you said the most -- you said

3  the recent quarter or the last quarter, I'm assuming third

4  quarter of 2022 reported wages.  Is that what you mean?

5    MR. STEPHAN:  That's correct.  Yes.  His weekly --

6    THE COURT:  And the other piece of -- the other piece of

7  info --

8    MR. STEPHAN:  The weekly gross -- the weekly gross was

9  1142.

10    THE COURT:  All right.  And the other piece of --

11    MR. SPEIGHT:  That's not true.

12    THE COURT:  -- information I need is, is Amanda receiving a

13  cash public benefit from the state of Massachusetts?

14    MR. STEPHAN:  No, Your Honor.  She -- her weekly gross

15  income is 1326.

16    THE COURT:  Any credits to either Amanda or Michael in the

17  calculation of the child support?

18    MR. STEPHAN:  Yes, there was health insurance was 85 and

19  dental and vision was 23.

20    THE COURT:  So who's that for?  Michael or Amanda?

21    MR. STEPHAN:  Let me just double check, Judge.

22    MR. SPEIGHT:  I pay 11.75 an hour for health insurance.

23  For me and my --

24    THE COURT:  That was for -- Michael, hold on, Michael.  I'm

25  talking to Attorney Stephan.  I'll get to you in a minute.

1    MR. STEPHAN:  Mother was given credit for $85 a week she

2    pays for health insurance and $23 a week she pays for dental and

3    vision.  He didn't submit a financial, Judge, so we weren't able

4    to --

5    THE COURT:  Okay.

6    MR. STEPHAN:  -- get any information from him.

7    MR. SPEIGHT:  That's -- that's -- that's not true.  I

8    submitted it to New Hampshire.

9    THE COURT:  Michael, Michael, Michael, Michael --

10    MR. SPEIGHT:  I submitted it --

11    THE COURT:  Michael, Michael, Michael, please listen to me.

12    So what we're going to do here is I'm going to explain to you

13    first how we calculate the child support that Attorney Stephan -

14    -

15    MR. SPEIGHT:  I already know how you calculate it.  You're

16    the only state --

17    THE COURT:  Michael --

18    MR. SPEIGHT:  -- in the whole country --

19    THE COURT:  Michael -- Michael -- Michael --

20    MR. SPEIGHT:  -- that didn't reform your child support

21    laws.

22    THE COURT:  Michael -- Michael -- Michael -- Michael, this

23    is the last time I'm going to caution you.  Stop talking over

24    me.  When I ask you to stop talking, I need you to stop talking.

25    If you do not comply with that instruction, I'm going to put you

1   on mute. I don't want to have to do that, Michael. But if you
2   keep interrupting me and talking over me, you will be on mute.
3       So now I'm going to explain to you how Attorney Stephan
4   came to $228 per week. In Massachusetts, we use a formula.
5   It's called the Child Support Guidelines Formula. It's based on
6   the average gross, gross means before they take out the taxes,
7   average gross weekly income of both the mother and the father.
8   And that gets put into a computer formula. So Amanda reported
9   that she was earning $1,326 gross, and she also reported that
10  she was paying $85 a week health insurance, $23 a week dental
11  and vision insurance. We didn't know any information about
12  Michael because apparently the information didn't come forth in
13  the conversation that Michael had this morning with the DOR
14  worker. So if you are paying for health insurance or dental and
15  vision, if you want to get credit for that, Michael, to lower
16  the child support amount, you need to tell us that information.
17  You should have told that to DOR this morning.

18      So what Attorney Stephan did, was he went into the DOR
19  database and discovered that for the third quarter of the year,
20  2022, third quarter means the months of July, August, and
21  September, your employer, Michael, reported to DOR that they
22  paid you a certain amount of money. And over that 13 week
23  period, your average gross was $1,142 per week.

24      So let me ask you this, Michael. Do you pay for or is it
25  taken out of your pay, health insurance? Michael?

1    MR. SPEIGHT: Yes, I pay 11.75 an hour. It's $22,000 a
2  year I pay for health insurance, dental, vision, everything.
3  And -- and I'm the primary insurer because I'm older than she
4  is. So I pay $22,000 --

5    THE COURT: So you said you paid -- Michael -- Michael --
6  Michael -- Michael -- Michael --

7    MR. SPEIGHT: Yeah.

8    THE COURT: Michael, you said $22,000. Is it exactly
9  $22,000, or is it a little bit more or a little bit less?

10    MR. SPEIGHT: It's 11.75 times 1200 hours.

11    THE COURT: 11.75 times 1200 hours. All right, let me just
12  calculate that. 11.75 times 1200 hours, that comes out to
13  $14,100. So did I make a mistake in my math, or didn't you say
14  $22,000?

15    MR. SPEIGHT: No. No, sometimes I work over 1500 hours and
16  I end up paying more.

17    THE COURT: All right, so if it's 14,100 over the course of
18  a year, if I divide that by 52 weeks. That's an average of $271
19  a week for health and dental and vision. Does that sound right,
20  Michael?

21    MR. SPEIGHT: Yes.

22    THE COURT: Okay, so now we know one more piece of
23  information. While I'm talking to Michael, Attorney Stephan, if
24  you could put that into the computer formula and credit Michael
25  for the $271, health, dental, and vision.

1    Okay, next question, Michael, I'm going to ask you all
2   about your expenses in a minute.  Your rent, your mortgage,
3   food, internet, cable, cell phone, car, credit cards, all those
4   kinds of things.  But before I do, that, the 228, again, that
5   was arrived at by the computer formula, the Child Support
6   Guidelines Formula by Attorney Stephan, without knowing the
7   information from Michael that he was paying an average of $271 a
8   week for health, dental, and vision.  So we'll get the new
9   number in a minute.

10       MR. STEPHAN:  182, Judge.

11       THE COURT:  182.  All right, so instead of 228, it's now
12  down to 182 is the computer formula amount.

13       So before I ask you, Michael, all about those expenses, let
14  me ask you this.  Is there an amount of child support that you
15  think you could afford to pay and still have enough left over
16  from your pay to pay your own living expenses, Michael, is there
17  an amount you have in mind?

18       MR. SPEIGHT:  Your Honor, I've been giving her $200 a week
19  without being ordered to, I don't want the DOR in my life.  You
20  can ask her.  Ever since she left, I've been giving her $200 a
21  week.  And some weeks, I gave her money for school clothes.
22  Some -- some weeks, I gave her extra money to get my daughter
23  things.  I asked her if my daughter needed school clothes.
24  There's no reason that we --

25       THE COURT:  Michael --

1    MR. SPEIGHT:  -- that -- there's no reason -- what?

2    THE COURT:  Michael, let me -- let me explain something.

3  The reason -- the reason we're here today is that Amanda asked

4  the Department of Revenue for assistance.  She didn't ask him

5  for money.  She asked him for assistance in collecting child

6  support.  So you told me that you were paying --

7    MR. SPEIGHT:  She --

8    THE COURT:  Michael -- Michael, you just told me you were

9  paying $200 a week voluntarily.  Let me ask you, Amanda, is that

10 accurate or not?

11    MS. KAELBLEIN:  It's accurate for the last few months,

12 that's correct.

13    THE COURT:  Okay, so now we've established that the past

14 few months --

15    MR. SPEIGHT:  And you -- and you --

16    THE COURT:  Michael -- Michael -- Michael -- Michael --

17    MR. SPEIGHT:  Yeah.

18    THE COURT:  Nyle, are you there?

19    THE CLERK:  Yeah.

20    THE COURT:  Put Michael on mute.  He's not following my

21 instructions.  He keeps interrupting.

22    THE CLERK:  Okay.

23    THE COURT:  Put him on mute.

24    THE CLERK:  All right.

25    THE COURT:  Let the record -- let the tape recording show

1   that we have put Michael on mute.  He can still hear what we are
2   saying, but we've put him on mute due to his constant
3   interruption and his refusal to follow the Judge's instructions.
4       So Amanda agrees with Michael that he's been paying her
5   about $200 a week voluntarily for the past few months.  So it
6   sounds like right now, the -- because he's paying the health
7   insurance he pays -- do you think that that's accurate, Amanda?
8   I don't know if you know Michael's business or not, but he says
9   he's paying what -- what amounts to an average of $271 a week
10  for health, dental, and vision insurance.  Does that sound
11  accurate to you, Amanda?
12      MS. KAELBLEIN:  So the average -- it may be accurate, but
13  it's -- it's involved in his earnings that you already
14  calculated prior to taking it out.  That's what they take out of
15  his pay, including his pension and annuity.  So his salary was
16  correct with the insurance taking out of it.
17      THE COURT:  So are you --
18      MR. STEPHAN:  You mean before or after?
19      THE COURT:  Are you saying --
20      MS. KAELBLEIN:  I'm saying the number that you have from
21  the DOR, it already includes the insurance being taken out of
22  it.  It's not -- it's not taken separately.
23      THE COURT:  All right, so -- so, again, Amanda, you may or
24  may not know his business.  I don't know if you have any
25  communication with Michael or not, but he told me that at the

1  rate of 11.75 an hour for 1200 hours a year, that's his debit,

2  so to speak, out of his pay for health, dental and vision

3  coverage, that averages $271 a week.  So right now, --

4       MS. KAELBLEIN:  Yeah.  I'm sorry.

5       THE COURT:  Right now, I'm just focused on his health,

6  dental and vision.  I'm not focused on his --

7       MS. KAELBLEIN:  Judge, with all due respect, I -- I -- he

8  didn't turn in the information.  So I'm not --

9       THE COURT:  Right.  So I'm just ask -- yeah, I'm just

10 asking you if you know, if you don't know, that's okay.

11      MS. KAELBLEIN:  Yeah, I don't -- I don't know if that's

12 accurate, and I would like to know if that's accurate.

13      THE COURT:  Okay.

14      MS. KAELBLEIN:  (Inaudible at 11:14:00, low audio.)

15      MR. STEPHAN:  Judge, --

16      THE COURT:  Attorney Stephan -- Attorney Stephan --

17      MR. STEPHAN:  Sure --

18      THE COURT:  Attorney Stephan -- Attorney Stephan, can I

19 speak?  My question to you, Attorney Stephan, is this, the third

20 quarter, 2022 wage reporting that you mentioned to me, are you

21 sure it's $1,142 gross average per week?

22      MR. STEPHAN:  Yes, Your Honor.

23      THE COURT:  Okay.  And you got that from wage reporting

24 from the employer?  Would that be accurate?

25      MR. STEPHAN:  Yes.  He's a union worker.  He's working at a

1  steel company.

            13

2      THE COURT:  All right, so, Amanda, even without me asking

3  Michael his expenses, if it's accurate that he does pay or gets

4  taken out of his pay, $271 per week, the Child Support Guideline

5  amount by law, which I'm supposed to order him to pay even

6  without knowing his expenses, his -- his expenses actually might

7  lower that amount, it's 182 a week, which is less than the $200

8  that you've just stated to us, you've confirmed that he's been

9  paying you that for the past few months.  So what do you want me

10  to do, Amanda?  Do -- so this is a -- a support complaint.  Are

11  you satisfied with Michael continuing to pay you $200 a week or

12  do you want me to take Michael off mute and ask him about his

13  expenses, which might affect the 182 guideline amount?  What

14  would you like me to do, Amanda?

15      MS. KAELBLEIN:  Judge, my only question is, I mean, I -- we

16  recently separated, so I have been with him for the last five

17  years.  So I also have his employers that he does side work for.

18  And so I would be happy with the $228 that you just mentioned.

19  Unless you want me to pass over the names of the people that he

20  works for on the side and gets paid cash for.

21      THE COURT:  All right, so what we're going to do here is,

22  Nyle, if you're with us still, if you could take Michael off

23  mute.  But before you do that, I need Michael to answer the

24  question.  This is my question, Michael.  Amanda says that she

25  has some kind of information or she believes that you also do

1  side work and get paid cash.  And I think what I'm hearing is
2  that maybe that's not showing up on the wage reporting in the
3  DOR database.  So my question to you, Michael, is, number one,
4  do you work on the side?  And if so, how much money do you earn?
5  Michael.

6      Nyle, you can take them off mute.
7      THE CLERK:  Mr. Speight, you're going to have to click on
8  mute on your phone.
9      THE COURT:  Michael, are you with us?
10     MR. SPEIGHT:  Yeah, I do side work sometimes, Your Honor.
11 Sometimes.  It depends if it's available or not.
12     THE COURT:  All right.  Can you give me an example now, now
13 is the month of November.  From January 1 of this year to now,
14 do you have any estimation of how much you might have earned
15 from the side work?
16     MR. SPEIGHT:  Probably about $2,000, $3,000.  I haven't
17 been doing much side work.
18     THE COURT:  Okay.  2000 or 3,000.  So that would be like,
19 maybe $40 a week, $60 a week.  Somewhere around there.  I'm not
20 sure that would increase the numbers that much if that's the --
21 if that's the case, Amanda.
22     Michael, is it -- what is it, like, a construction company?
23 A landscaping company?  Masonry.  What do you do on the side
24 work?
25     MR. SPEIGHT:  I -- I go to union guys' houses and I help

1  them out with their foundations.  I -- once in a while, a kid

2  will call me and he needs me to lay out a step.  So I lay it out

3  for him and he finishes it.  Plowing, sometimes shoveling.  I

4  mean, it all depends, Your Honor, if the work is available, I

5  take it.  Lately I haven't been taking any because I've been

6  concentrating on getting back to work for the union.  Right now

7  I'm on unemployment and I get $724 a week.  DOR knows that --

8      MS. KAELBLEIN:  Your Honor, can I ask a question -- can I

9  ask --

10      THE COURT:  No, no, no.  Hold on -- hold on a second.  Hold

11  on a second.  Hold on a second, Amanda.  It's Michael's turn.

12      MS. KAELBLEIN:  Yes, no problem.

13      THE COURT:  In a minute.  It'll be your turn in a minute.

14  So, Michael, you just said, I think I heard you say you're on

15  unemployment.  How long have you been on unemployment?

16      MR. SPEIGHT:  Three weeks.

17      THE COURT:  Okay.  And do you normally go on unemployment

18  each year?

19      MR. SPEIGHT:  Yes, during the winter.  I'm a seasonal

20  worker.

21      THE COURT:  Okay.  Let me ask you -- now it's Amanda's

22  turn.  Don't interrupt, Michael.

23      Amanda, he says that it's seasonal work and during the

24  winter usually doesn't work.  You say you lived with them for

25  five years.  Is that accurate or not?

1  MS. KAELBLEIN:  Unfortunately, none of this is accurate
2  just because I know his income obviously based off of the last
3  five years.  Your Honor, am I able to ask, is Michael willing to
4  -- he goes by Sean to me.  I'm used to calling him Sean.  Sorry,
5  but it's a weird thing, Michael, but is Michael willing to
6  settle at the 228 and just be done with this?
7      THE COURT:  Michael she -- she says that she'll accept 228
8  a week.  Is that something you're interested in or not?
9      MR. SPEIGHT:  Your Honor, we can settle on it, but I'm
10  appealing it to Superior Court because the child hasn't lived in
11  Massachusetts for six months.
12      THE COURT:  Amanda --
13      MS. KAELBLEIN:  Your Honor, he's doing the settlement
14  dance.
15      THE COURT:  -- so he says -- hold on a second.  Hold on a
16  second.  Hold on a second, both of you.
17      Amanda, this question is for you.  Michael says that the
18  child hasn't lived in Massachusetts.  Now, that doesn't mean
19  that she's not entitled to child support.  What matters is, does
20  the child actually reside with Amanda?  Amanda, does the child
21  reside with you?
22      MS. KAELBLEIN:  She does.  Yeah.
23      THE COURT:  All right.  What state do you live in, Amanda?
24      MS. KAELBLEIN:  Massachusetts.
25      THE COURT:  All right.  So, Michael, why do you think the

1   child doesn't live in Massachusetts?  What information do you

2   have?

3       MR. SPEIGHT:  I didn't -- I didn't say that, Your Honor.

4   What I said is, it's a child state law, home state law.  The

5   child has to live in a state for six months before any --

6   anything can be filed.  Also, Derry Family District Court

7   already ruled they have jurisdiction over this case.  Stephan

8   knows that.  My lawyer talked to Stephan.

9       THE COURT:  So, Amanda --

10      MS. KAELBLEIN:  Your Honor, this is --

11      MR. SPEIGHT:  This is already --

12      THE COURT:  Amanda -- no, no, no.  Stop.  Michael --

13  Michael, please.  It's Amanda's turn.  I'm trying to ask a

14  question to Amanda.

15      Amanda, did you recently live in New Hampshire and moved to

16  Massachusetts?

17      MS. KAELBLEIN:  My legal address and Vivian's legal

18  address, her schooling, her ABA services for her autism have

19  always been in Massachusetts.  I don't -- I don't see how this

20  pertains, honestly, just because this is for child support.  But

21  I do have to say, we did reside with Michael for a short period

22  of time and we left due to a dangerous situation.  And he had

23  asked us to leave because of the dangerous -- dangerous --

24      THE COURT:  All right.  So, Amanda -- Amanda -- Amanda, I

25  need you to focus on my question.  You said you didn't think it

18

1  mattered.  It does matter.

2      MS. KAELBLEIN:  Okay.

3      THE COURT:  Did another State Court, specifically New

4  Hampshire, did they already issue a child support order

5  involving this child and Michael?

6      MS. KAELBLEIN:  No, they have not.

7      THE COURT:  Is that correct, Michael?

8      MR. SPEIGHT:  They're ordering on the 15th, Your Honor.

9  The child has been out of New Hampshire five months now.

10 They're ordering the child support and visitation on the 15th.

11 I haven't seen my daughter in five months, Your Honor.

12      THE COURT:  All right.  So -- so Michael -- Michael --

13 Michael, let me ask you this.

14      So it sounds to me, Michael, that there's a case that was

15 already filed in the state of New Hampshire and you're waiting

16 for a hearing.  Is that right, Michael?

17      MR. SPEIGHT:  Yes.  June 3rd, the case was filed for

18 custody and child support.  And they -- they --

19      THE COURT:  All right.  So who filed -- Michael -- Michael

20 -- Michael -- Michael, who filed the case?  Was it you or

21 Amanda?

22      MR. SPEIGHT:  I -- I did.

23      THE COURT:  All right.  So, Amanda, did Michael file a case

24 involving custody and child support regarding this --

25      MS. KAELBLEIN:  He did.

23

19

1    THE COURT:  -- in New Hampshire?

2    MS. KAELBLEIN:  He filed the chase -- case for custody in

3    New Hampshire that we never --

4    MR. SPEIGHT:  And -- and child support.  And child support.

5    THE COURT:  Amanda -- Amanda -- Amanda, when did he -- when

6    did you get served with the paperwork that Michael filed about

7    the custody and possibly child support in New Hampshire?  When

8    did you get served?

9

10   MS. KAELBLEIN:  Sometime in July.

11   THE COURT:  You were served in July?  Okay.  And is there -

12   -

13   MS. KAELBLEIN:  For custody, Your Honor.

14   THE COURT:  Amanda -- Amanda -- Amanda, please listen to my

15   question.  My question to Amanda is this, are you aware of a

16   Court date scheduled for the hearing on the case that Michael

17   filed?

18   MS. KAELBLEIN:  I am aware of a hearing that involves --

19   involves child custody, not child support.

20   THE COURT:  And when is that date of the hearing?

21   MS. KAELBLEIN:  November 15th.

22   THE COURT:  All right.  And, Michael, you say that the case

23   that you filed is not just custody, but it's child support.  Is

24   that what you're telling me, Michael?

25   MR. SPEIGHT:  Yes.  I checked off all the boxes, Your

     Honor.  Child support, custody, I got the paperwork right here -

1  -

2      THE COURT:  He says -- Amanda -- Amanda -- Amanda, do you

3  have a copy of the -- of the complaint that Michael filed in the

4  Court in New Hampshire?  Do you have that with you?

5      MS. KAELBLEIN:  I might have it with me in my email.

6  There's a lot of things filed.

7      THE COURT:  Well, didn't you get -- didn't you get filed --

8  didn't you get served in person at your house with physical

9  papers?

10      MS. KAELBLEIN:  No, I did not get served in person.

11      MR. SPEIGHT:  No, she was in Florida with the kid --

12      THE COURT:  Michael -- Michael -- Michael, it's a question

13  to Amanda.

14      So, Amanda --

15      MS. KAELBLEIN:  I was not served in person.

16      THE COURT:  Amanda -- Amanda -- Amanda, please don't make

17  me put both of you on mute.

18      MS. KAELBLEIN:  I'm sorry.  I was just answering your

19  question.  I was not -- no, I was not served in person.

20      THE COURT:  So you were not served in person.  So how did

21  you get served, Amanda?

22      MS. KAELBLEIN:  There was a letter in the mailbox.

23      THE COURT:  All right, so the service was by mail, but not

24  in your hand, but it was in your mailbox?

25      MS. KAELBLEIN:  Correct.

1    THE COURT:  All right.  And the box --

2    MR. STEPHAN:  Judge, I have information on that if you'd

3    like it.

4    THE COURT:  I'm going to get to your next Attorney Stephan,

5    please, I'm talking with Amanda right now.

6    So, Amanda, do you have the paperwork that you received in

7    the mailbox?  Do you have that in your house?

8    MS. KAELBLEIN:  I don't have it with me right now.  No.

9    THE COURT:  But is it in your house?  Can you locate it?

10   MS. KAELBLEIN:  Yes, I'd be able to locate it.  Yes.

11   THE COURT:  All right, so why don't you step away from your

12   phone or your computer and go --

13   MS. KAELBLEIN:  Judge, I'm at -- I'm at work right now, so

14   I'm not at home.

15   THE COURT:  Oh, you're at work.  Okay.  All right.

16   So, Michael, do you have a copy of the paperwork that was -

17   -

18   MR. SPEIGHT:  Yes, I have it.  I have it, Your Honor, I can

19   read it off to you.

20   THE COURT:  All right, read it off to me.

21   MR. SPEIGHT:  It says Temporary Petition, Request the Court

22   Orders Temporary Petition, respectfully request the Court to

23   issue temporary orders of the following issue.  Final, the

24   petition respectfully requests the Court to issue final orders

25   approving and establishment the following, check if they apply.

27

22

1   A parenting plan which describes parties' parental rights and
2   responsibilities where related to the minor child; child support
3   obligations for the minor child; and other custody.  I
4   acknowledge and have continued duty to inform the Court, any
5   Court action in this, and any other state could affect the
6   child's case.  I swear that the full bearing information is true
7   and correct to the best of my knowledge.  New Hampshire,
8   Rockingham County, June 3rd.
9       THE COURT:  All right.  And, Amanda, when -- when did you
10  notice those papers in your mailbox?
11      MS. KAELBLEIN:  Sometime in July.
12      THE COURT:  And when did you contact the Massachusetts
13  Department of Revenue for assistance in collecting child support
14  from Michael?
15      MS. KAELBLEIN:  Before I received that paperwork, I called
16  them.  I want to say June 6th, I think I called to check, it was
17  June 6th, and they asked if I wanted to reopen the case.  I said
18  yes.  They called again to make sure I wanted to reopen the
19  case.  I said yes.  And then they called two weeks ago to say
20  that Michael wanted it moved to New Hampshire, and they asked if
21  I still wanted to proceed in Massachusetts, and I told them yes.
22      THE COURT:  All right, so now, Attorney Stephan, let me ask
23  you this.  What was the date of service on Michael?  I think you
24  told me August 19th;, right?
25      MR. STEPHAN:  Let me check, Judge.  I've -- I've spoken to

1 the defendant's attorney who represents him on his case in New
2 Hampshire. He filed the complaint for parenting time in New
3 Hampshire. And I went over this with his attorney. I had
4 several conversations with him. Child support was not pled in
5 New Hampshire. That's why we're going forward with it in
6 Massachusetts. But I have spoken to his attorney about this at
7 length, and he didn't plead that the Court enter an order for
8 child support against him in New Hampshire. That's why we filed
9 in Massachusetts.

10          THE COURT: So Michael, Attorney Stephan says that you
11 didn't mark the box that says child support.

12          MR. SPEIGHT: Your Honor, I have it right in front of me.
13 I did mark the box. I marked every box. This is my daughter,
14 my five year old daughter. Yes. I want to take care of her.

15          THE COURT: All right. So what we're going to have to do
16 is this, Michael -- Michael, what we're going to have to do is
17 this, Michael and Amanda, I'm going to need a copy from the New
18 Hampshire Court of the document that was actually filed by
19 Michael to see whether he actually checked the box that says
20 child support. And the reason is this, we can't have two
21 different child support cases going on at the same time in two
22 different states. If another state has already taken
23 jurisdiction of the issue of child support, I'm not saying New
24 Hampshire has or hasn't, then the child support issue would
25 belong in the New Hampshire Court. I don't know what's accurate

1   right now.  Michael is telling me one thing.  Attorney Stephan

2   is telling me something else.  Amanda agrees with Attorney

3   Stephan that there was no child support request.  Michael

4   insists that there was in New Hampshire.  So I'm not going to

5   take any action right now about child support until I know

6   definitively by getting a copy of the filing in New Hampshire by

7   Michael to see whether he checked the child support box.  So I'm

8   going to continue this without any sort of order.

9        Attorney Stephan, I need you to get a copy of the filing in

10   New Hampshire, and schedule another date and notify Amanda and

11   Michael about the next date.  Hopefully we'll get some clarity

12   after we see that New Hampshire filing.  All right?

13        Let me start with you, Amanda.  Any questions you'd like to

14   ask?

15        MS. KAELBLEIN:  Yeah, my only question is, honestly, since

16   this is about his daughter, I'm confused why he won't settle on

17   paying money towards her through the system.  It's either --

18   wherever it's out of, it's about her.  And I just -- it's really

19   disheartening to see that this is the combative behavior that

20   I've been dealing with for the last six months.

21        THE COURT:  Okay.

22        MS. KAELBLEIN:  So my question is timeline for when he has

23   to get this information in just because I need this to -- he's

24   been unreliable in the past.  And so I need this order to be in

25   place.

1  THE COURT: Let me ask you this, Amanda. When is the last

2  time Michael paid the $200 he says he was voluntarily paying?

3  MS. KAELBLEIN: He paid it last week. I asked him for it

4  this week, and he did not send it to me, so.

5  MR. SPEIGHT: That's not true, Your Honor.

6  THE COURT: So as recently a week ago or so -- Michael --

7  as recently as a week ago or so, Michael paid you $200 as he has

8  for the past few months. Is that right, Amanda?

9  MS. KAELBLEIN: Right. And so my question, can I ask

10  again, Your Honor, is why he will not just settle on this so

11  that I can go through the DOR, because this is about our

12  daughter?

13  THE COURT: Michael, do you want to answer that? Go ahead.

14  MR. SPEIGHT: Yes. First of all, I don't -- listen, I can

15  pay my own bills. I don't need the DOR to get involved in my

16  life; right?

17  THE COURT: Well --

18  MR. SPEIGHT: I don't need the Court to be --

19  THE COURT: So, Michael -- Michael -- Michael -- Michael --

20  MR. SPEIGHT: Yeah.

21  THE COURT: So we're here.

22  MR. SPEIGHT: Yeah.

23  THE COURT: Amanda is trying to resolve this without

24  further Court activity, either here or New Hampshire or through

25  the Massachusetts DOR. She's asking, would you like to resolve

1  it and settle it right now?

2      MR. SPEIGHT:  I'll give her the 228, Your Honor, without

3  the DOR going into my check and taking the money.  I'll pay

4  myself.

5      THE COURT:  Amanda, he says he'll pay you 228, but not

6  going through DOR.  What do you say?

7      MS. KAELBLEIN:  If I can ask just how that -- how that

8  works, so that, like, what happens if he does not pay it?  I

9  mean, I'm just confused why you won't go for -- through the DOR.

10  I'm talking to you on a personal level, Sean.  This is about our

11  child.  This isn't very, very --

12      MR. SPEIGHT:  Because Amanda, listen.  I'll take -- Amanda,

13  I'll take care of my daughter.  You know that.  You lived with

14  me, I paid all the bills.

15      MS. KAELBLEIN:  I know you -- I don't -- I'm not saying you

16  won't -- I'm get -- trying to get along with you.

17      MR. SPEIGHT:  All right.  So stop -- listen, so stop --

18      MS. KAELBLEIN:  No, I'm trying to --

19      MR. SPEIGHT:  Listen, so stop saying that -- please stop

20  saying that it's about our daughter, and I can't believe you --

21      THE COURT:  All right.  Nyle -- Nyle, could you put them

22  both on mute, please?

23      THE CLERK:  Yeah.

24      THE COURT:  All right.  Let the record show 11:19 a.m.  The

25  Judge has instructed our administrative assistant today to put

1   both Amanda and Michael on mute, and what I'll do is I'll
2   schedule this, you know, I don't know if there's a restraining
3   order in effect between the two of you.  If there is, then there
4   shouldn't be any contact, or at least according to what the
5   terms of the restraining order are.  But I understand that
6   Michael is willing to pay what Amanda wants, which is 228 per
7   week, but Michael doesn't want to do it through the Department
8   of Revenue.  That would be an extra step.  If, for example,
9   Amanda agreed for Michael to pay the 228, but without going
10  through the Department of Revenue, if he started to -- to miss
11  some payments or if he wasn't paying the full 228, then Amanda
12  could contact DOR and we'd be back in the same spot, of
13  wondering whether it's New Hampshire or Massachusetts, which has
14  jurisdiction over the child support issue.
15      If there is no restraining order in effect between the two
16  of you, I would urge Amanda and Michael to try to resolve this
17  either with or without the Department of Revenue.  It's up to
18  you.  I understand that both of you want to be involved parents,
19  there are high emotions going on right now.  But again, it's up
20  to you.  If there's no restraining order, if you want to contact
21  each other for the 228 with or without the Department of
22  Revenue, that's between the two of you.
23      In the meantime, I am going to ask Attorney Stephan to get
24  that copy of the -- of the New Hampshire Court filing to see
25  whether the child support box was marked or not.  Even if it

| 28

1   wasn't, then we're here in Massachusetts dealing with the -- the

2   DOR case, which is why we're here today.

3       MR. STEPHAN:  Judge, if I could just add something.

4       THE COURT:  What?

5       MR. STEPHAN:  If Your Honor -- if Your Honor wanted to

6   enter an order today for $228 a week by suspended wage

7   assignment, that means he's to pay her directly.  But if he

8   doesn't pay her directly, mother can request that it be by wage

9   assignment, and we can start doing it by wage assignment.  So as

10  long as he pays faithfully 228 a week, he doesn't have to have

11  DOR involved.  But if he doesn't, mother can request that it be

12  by wage assignment, and then we would become involved.

13      THE COURT:  So even if it's suspended wage assignment, that

14  means that the DOR case is still on the table, Attorney Stephan;

15  correct?

16      MR. STEPHAN:  There would be a Court order in place, but it

17  would be a non-4D case, which means it would be a state case

18  registry only case.  So it would be on our system that there's

19  an order in effect for $228 a week, but he's going to pay her

20  directly, so we just have a record of the order on our computer

21  system.  However, if he doesn't pay her faithfully $228 a week,

22  mother can contact the Department and ask that we implement a

23  wage assignment, which we will do.

24      THE COURT:  All right.

25      MR. STEPHAN:  So as long as he pays, he's fine.

1     THE COURT:  Michael, I hope you understood that.  And

2  Amanda as well.  Even though it would still be technically a DOR

3  case, the payments would not go through DOR.  The 228 would be

4  paid directly by Michael to Amanda.  I don't know if that's

5  something that's acceptable to you or not, Michael or Amanda.

6     Let me start with Amanda first.  If you could take Amanda

7  off mute first, Nyle.

8     THE COURT:  Yeah.

9     THE COURT:  So, Amanda Attorney Stephan has suggested what

10  he just suggested, is that something acceptable to you or not?

11     MS. KAELBLEIN:  I feel as though that's acceptable, so

12  it'll remain open, and then he pays me in good faith.  And then

13  if he doesn't, then yeah.

14     THE COURT:  Okay.  All right.  So the answer is yes.  All

15  right.  So, Nyle, put Amanda back on mute, please, and Michael -

16  - and Nyle, take Michael off of mute.

17     And, Michael, is that something acceptable to you or not?

18  You'd be paying Amanda directly, but technically, the DOR case

19  would still be open, but as long as you paid, we wouldn't be

20  back here by Zoom or any other way.

21     Michael, what do you say?

22     MR. SPEIGHT:  I'll pay it.  But, Your Honor, can I say one

23  thing, sir?

24     THE COURT:  Go ahead.

25     MR. SPEIGHT:  I haven't seen my child, and this is going on

1   six months.

2        THE COURT:  All right, so you've --

3        MR. SPEIGHT:  And I've been paying her the whole time.

4        THE COURT:  You've got a case, -- apparently, Michael, you

5   get a case.  Both of you admit you've got a case in New

6   Hampshire going on about custody and parenting time.  There's a

7   dispute about whether it's child support or not, but if you file

8   that case, and if not, how long you been here -- put Michael

9   back on

10  -- on mute, Nyle, and take Amanda off mute.

11       Amanda, how long you been back to Massachusetts with the

12  child?

13       MS. KAELBLEIN:  I've been back since May.  And, you know,

14  it's -- so we'll figure out parenting, obviously, but her

15  schooling and everything.

16       THE COURT:  So has it been -- has it been -- has it been

17  more than six months?

18       MS. KAELBLEIN:  Mine and her legal residence has always

19  been Massachusetts.  We resided with him for a short period of

20  time.

21       THE COURT:  Amanda -- Amanda -- Amanda, please --

22       MS. KAELBLEIN:  That's how it is.

23       THE COURT:  Answer my question.  Has it --

24       MS. KAELBLEIN:  It's been for the last six months.

25       THE COURT:  Amanda -- put her -- put her on -- put her on

1  mute again, please.  I think we've reached a productive end to
2  our conversation.

3      So, Attorney Stephan, again, you can get a copy of the New
4  Hampshire filing and schedule this for a review date, and I'll
5  consider whether to enter a temporary order or not, with or
6  without a suspended wage assignment.  And that will come in the
7  mail to the parties in roughly seven days or so.  I've been
8  doing this for a while now.  I've heard thousands of cases, and
9  I can count on less than two hands the number of times I've had
10  to put people on mute during the hearing.  It's unfortunate I've
11  had to do it in this case to maintain order in this hearing,
12  unfortunately.  But I do wish both of you well.  Stay safe and
13  healthy.  I hope you get the custody parenting time case
14  resolved in New Hampshire.  Ultimately, it's about the child.
15  And good luck to both of you.  And, Attorney Stephan, you'll
16  schedule another date for the hearing if we need it.  Thank you
17  very much.  It's 11:26 a.m.  Hearing is concluded.

18
19
20
21
22
23
24
                          (Adjourned)
25



The Commonwealth of Massachusetts
OFFICE OF COURT MANAGEMENT, Transcription Services

## AUDIO ASSESSMENT FORM

**For court transcribers:** *Complete this assessment form for each volume of transcript produced, and include it at the back of every original and copy transcript with the certificate page, word index, and CD PDF transcript.*

**TRANSCRIBER NAME:** Donna H Dominguez

**TODAY'S DATE:** January 31 2023

**CASE NUMBER:** MI22W1174WD

**CASE NAME:** Kaelblein v Speight

**RECORDING DATE** November 3 2022 **TRANSCRIPT VOLUME:** 1 OF 1

*(circle one)* **TYPE: CD TAPE**    **QUALITY: EXCELLENT    GOOD    FAIR    POOR**

*(circle all that apply)* **ISSUES** *(include time stamp):*

background noise                 time stamp:_____

low audio                        13:14:00_____

low audio at sidebar             _____

simultaneous speech              _____

speaking away of microphone      _____

other:_____            time stamp:_____

_____                  _____

_____                  _____

_____                  _____

**COMMENTS:**_____
_____
_____
_____
_____

## Certificate of Accuracy

I, Donna Holmes Dominguez, an Approved Court Transcriber, do hereby certify that the foregoing is a true and accurate transcript of the audio recording provided to me by the Middlesex County Probate and Family Court regarding proceedings in the above-entitled matter.

I, Donna Holmes Dominguez, further certify that the foregoing is in compliance with the Administrative Office of the Trial Court Directive on Transcript Format.

I, Donna Holmes Dominguez, further certify that I neither am counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

"/s/ Donna Holmes Dominguez"
Donna Holmes Dominguez, ACT, CET
Notary Public, Commission Expires 5-17-24

January 31, 2023
Date

(781) 820-5032

donna@dhreporting.com