<pre>
 1                   UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2


 3


 4     Pro se litigant          )
       Michael Sean Speight, III, )
 5              Plaintiff,       )
                                 )
 6                               )
       vs.                       )   Case No. 24-cv-12363-PBS
 7                               )
                                 )
 8     Amanda Kaelblein, et al., )
                Defendants.      )
 9


10


       BEFORE:  The Honorable Magistrate Judge Paul G. Levenson
11


12

                          (Digital Recording)
13                        Motion Hearing


14


15


16                               United States District Court
                                 1 Courthouse Way
17                               Boston, Massachusetts
                                 February 3, 2025
18


19


20


21


22
                       Marianne Kusa-Ryll, RDR, CRR
23                        Official Court Reporter
                       United States District Court
24                      595 Main Street, Room 514A
                        Worcester, MA 01608-2093
25                   508-929-3399 justicehill@aol.com
                   Mechanical Steno - Transcript by Computer
</pre>

1   APPEARANCES:

2   Michael Sean Speight, III
    Local 3
3   100 Main Street, #106
    Pembroke, New Hampshire 03275
4   Pro se

5   Nicole M. Fontaine Dooley, Esquire
    29 Factory Street
6   P.O. Box 507
    Nashua, New Hampshire 03060
7   on behalf of the Defendants Michael Kaelblein and Nancy
    Kaelblein
8
    Eric A. Martignetti
9   Massachusetts Attorney General's Office
    McCormack Building
10  One Ashburton Place
    Boston, Massachusetts 02108
11  On behalf of the Defendant Eric Stephanie

12

13

14

15
                    **Proceedings recorded by sound recording**
16                  **and produced by computer-aided stenography**

17

18

19

20

21

22

23

24

25

1                            P R O C E E D I N G S

2              (At 2:06:04 p.m., the audio recording begins.)

3              THE CLERK:  All rise.

4              Good afternoon.  The United States District Court for

5     the District of Massachusetts is now in session, the Honorable

6     Paul G. Levenson presiding.

7                   You may be seated.

8                   Today is February 3, 2025, Speight versus Kaelblein,

9     et al., Docket -- Docket No. 24-cv-12363.

10                  Parties, please identify yourself for the record.

11                  Please identify yourself for the record.

12             THE PLAINTIFF:  Michael Sean Speight.

13             THE COURT:  Good afternoon.

14             MR. MARTIGNETTI:  Good afternoon, your Honor.  Eric

15    Martignetti representing Defendant Eric Stephanie.

16             THE COURT:  Good afternoon.

17             MS. FONTAINE DOOLEY:  Good afternoon, your Honor.

18    Attorney Nicole Fontaine Dooley on behalf of Michael and Nancy

19    Kaelblein.

20             THE COURT:  Good afternoon.

21             So, ah, we've got several pending matters here.  I

22    think I'm going to want to start with just a -- reviewing

23    what's on the docket.  We have a motion for leave to file

24    evidence to further support opposition motion and memorandum of

25    law.  This is Docket No. 91.

1           I didn't see an opposition.

2           The request is from Mr. Michael Speight to add various

3     documents to the record.  Mostly, these seems to be a mix of a

4     parenting decree filed in Derry Family Court, a police report,

5     and various letters from neighbors.

6           I have to say on a motion to dismiss, typically, I do

7     not give weight to evidentiary materials.  The idea is to

8     evaluate the claims themselves before we get into the evidence,

9     but I'm inclined to put them on the record just so you have a

10    full record.

11          I'll hear from the defendants.

12          Any -- any objection to doing it that way?

13          MR. MARTIGNETTI:  Ah, yes, your Honor.  I would object

14    to that for the very reason you stated.  This is a motion to

15    dismiss, and we go by the four corners of the complaint when

16    deciding motions to dismiss, and we do not refer to evidence

17    outside the record.

18          MS. FONTAINE DOOLEY:  I -- I don't have much to add,

19    your Honor --

20          THE COURT:  All right.

21          MS. FONTAINE DOOLEY:  -- but I'd object.

22          THE COURT:  The objection is overruled.  I will allow

23    the filing of those materials.  That does not mean the -- that

24    I'm making any ruling about there being properly considered at

25    this stage, but simply completing the record.

1              So, now, I think --

2              (The clerk conferred with the Court.)

3              THE COURT:  Yeah.  I'll try to keep the mic closer.

4    All right.

5              So Ms. -- Ms. Dooley, have you reviewed the other

6    motion to dismiss filed on behalf of Mr. Stephanie?

7              MS. FONTAINE DOOLEY:  I have reviewed it.

8              THE COURT:  All right.

9              MS. FONTAINE DOOLEY:  I'm not privy to speak on it, of

10   course.

11             THE COURT:  Well, let -- let me ask you this.

12   Is -- do you wish to join the argument that Rooker-Feldman and

13   Younger abstention apply in this case?

14             MS. FONTAINE DOOLEY:  So, yes, your Honor, and I think

15   the Younger abstention doctrine is one that we cite via the

16   *Sutter v. Petts* case in our --

17             THE COURT:  Right.  I had some concerns about whether

18   *Sutter* is necessarily still good law given that the Supreme

19   Court has visited the area after *Sutter*, but I take it you'd

20   like to at least join in that portion of the defendants'

21   motion -- of the codefendants' motion?

22             MS. FONTAINE DOOLEY:  Yes, your Honor.  And I would

23   note that I believe I can grant the Returgis (phonetic) case

24   you're referring to does leave open the possibility for cases

25   like this for *Sutter* to survive even after (indiscernible) --

1          THE COURT:  I think it leaves it open.  I think it

2    just -- it's not completely clear to me where things stand in

3    the First Circuit.

4          All right.  Thank you.

5          So, Mr. Speight, I'm going to turn to you.  Have you

6    had a chance to review all the papers that have been filed in

7    this matter?

8          THE PLAINTIFF:  Yes, sir.

9          THE COURT:  Okay.  You're going to need to stand up

10   when you speak to the Court.

11         THE PLAINTIFF:  Sorry.

12         THE COURT:  It's just a custom here.

13         THE PLAINTIFF:  I apologize.

14         THE COURT:  No, no, that's fine.

15         There's a couple different ways they're getting at it,

16   but almost all of the arguments come down to in one way or

17   another an argument that the relief you're seeking could only

18   be granted if the Court were to find that rulings from either

19   the Massachusetts or New Hampshire Family Courts were incorrect

20   or reached a wrong result.

21         Is that accurate?

22         THE PLAINTIFF:  It is, sir, but we're not sure -- I'm

23   not trying to overturn the Massachusetts child support order.

24         THE COURT:  Uh-huh.

25         THE PLAINTIFF:  And the Rooker-Feldman doctrine

1     doesn't apply because the -- that -- the child support order

2     that Phelan put in was dismissed.  It was vacated.

3          So it's a vacated order that he's trying to

4     say -- he's trying -- the attorney general is trying to say

5     is origin- -- it's the child support order that's in now.  It's

6     not.  They put in an order.  It lasted two weeks.  They vacated

7     it because it violated my rights and my child's rights, and my

8     child might have a claim against them, too, but -- all the

9     defendants but it -- the Rooker-Feldman doesn't apply in

10    the -- the abstinent (phonetic), if that's what it's called.

11    It doesn't apply here because it was bad faith on Stephanie.

12          I recently got a document from Attorney Mike Ryan.

13    Mike Ryan sent Eric Stephanie an email stating that -- that we

14    were pleading child support and custody in New Hampshire and

15    that -- and that was, ah...

16          THE COURT:  So who was -- who was Attorney Ryan?  I'm

17    sorry.

18          THE PLAINTIFF:  And he's a witness.  He's going to be

19    a witness on my list.  He informed Eric Stephanie that we were

20    pleading child support and custody in New Hampshire.  And

21    he -- and even in his email, he told Stephanie, I'm assuming

22    you will dismiss the child support here, and Stephanie wrote

23    back to him and said no.

24          So -- so it's a -- when a state actor acts in a way

25    that, ah -- and I'm not an attorney.

1          THE COURT:  No, I understand.

2          THE PLAINTIFF:  So forgive me.

3          THE COURT:  You've worked very hard to master this,

4    and I'm trying to focus on a specific issue that for right now

5    I think weighs very heavily on my decision about whether your

6    case goes forward, which is I'm trying to figure out, and I --

7    I -- I hear a few things.  I hear you're seeking damages as

8    opposed to injunctive relief.

9          So at least on the face of it, you're not asking me to

10   enter a child support order or a custody order; is that

11   correct?

12         THE PLAINTIFF:  Correct, because federal court can't.

13         THE COURT:  Correct.  All right.

14         THE PLAINTIFF:  They can't intervene in state Probate

15   Court cases.

16         THE COURT:  All right.  So -- but then my next

17   question is you're also though seeking damages against various

18   individuals, including, ah, the -- ah, Michael and Nancy

19   Kaelblein -- am I saying the name correctly?

20         MS. FONTAINE DOOLEY:  Yes, your Honor.

21         THE PLAINTIFF:  Champer- -- Champerty and barratry.

22         THE COURT:  No, I'm -- it's less about the

23   terminology.

24         THE PLAINTIFF:  (Indiscernible.)

25         THE COURT:  I understand, but the -- the question from

1   me is how could I rule in your favor without finding that

2   something wrong happened in the state court?

3          THE PLAINTIFF:  Well, something -- something wrong did

4   happen.

5          THE COURT:  Well, so, all right.  So let me phrase

6   that differently.

7          Your claim against -- let's start with Michael and

8   Nancy Kaelblein depends on my ruling that something wrong

9   happened in the state court; is that correct?

10         THE PLAINTIFF:  Yes, because they supported their

11  daughter, Amanda Kaelblein.

12         THE COURT:  Let me ask you.  This is -- I'm going to

13  go to a different topic, but you just brought it up.

14         When you say "they supported," what is it you're

15  saying they did?

16         THE PLAINTIFF:  Well, I can prove that they mislead

17  the Court.  They gave false statements as recent as August of

18  this year when they knew they had a federal case against them.

19  They gave false statements to a core clinician, Jennifer

20  Westbrook.

21         THE COURT:  So -- so your claim is that in connection

22  with state court proceedings they said things that you contend

23  are false?

24         THE PLAINTIFF:  Interference with Probate Court

25  matters.  They worked in concert with their daughter, who

1    worked in concert with that (indiscernible) --

2           THE COURT:  Right, but when you say "worked in

3    concert," are you saying they gave testimony?

4           THE PLAINTIFF:  Ah --

5           THE COURT:  What are you saying they did?

6           THE PLAINTIFF:  Well, the -- well, the -- Nancy

7    Kaelblein even went as far as the attorney in New Hampshire

8    said she was the primary caregiver of my daughter.  And -- and

9    the attorney said that no one -- they didn't object

10   when -- when the judge swore Amanda in, he said that if there's

11   anything that's not true, you have to stop your attorney.  No

12   one objected to it.  She even stood up in the courtroom

13   when -- when, ah -- when --

14          THE COURT:  All right.  So -- so you're saying that

15   there was testimony given that you contend was inaccurate or

16   false --

17          THE PLAINTIFF:  Yes.

18          THE COURT:  -- is that correct?

19          THE PLAINTIFF:  Yes.

20          THE COURT:  And your contention is that led to rulings

21   that harmed you or harmed your daughter; is that right?

22          THE PLAINTIFF:  Yes, and they -- and, your Honor, they

23   did harm me and my daughter, so.

24          THE COURT:  Now, let me take it -- I'm going to -- I'm

25   going to ask the questions here --

1          THE PLAINTIFF:  Okay.

2          THE COURT:  -- because I really have specific

3     questions I have to answer before I can figure out whether or

4     not this Court has jurisdiction.

5          So the harm that you're alleging comes from rulings

6     by the courts in New Hampshire and Massachusetts; is that

7     correct?

8          THE PLAINTIFF:  Yes.  For rights -- it's caused by the

9     rights violation.

10          THE COURT:  I understand that you believe that the

11     outcome was the result of a violation of your rights, but the

12     outcome that caused the harm were rulings by those courts; is

13     that correct?

14          THE PLAINTIFF:  Yes.

15          THE COURT:  Okay.  Thank you.

16          That's helpful.  Give me just a moment.

17          (Pause.)

18          THE PLAINTIFF:  Can I elaborate a little bit on that?

19          THE COURT:  Ah, no.  I'd -- I'd like to first make

20     sure --

21          THE PLAINTIFF:  All right.

22          THE COURT:  I will give you an opportunity to speak,

23     but I just want to make sure that I'm getting answers to the

24     questions that I need answers to.

25          (Pause.)

1          THE COURT:  What is the current status of the

2     Massachusetts Probate and Family Court case?  Is it still

3     pending?

4          THE PLAINTIFF:  Yes, and -- and that's where the

5     harm's done, your Honor.

6          THE COURT:  Well, no -- does -- first, tell me

7     where -- what is the status?  Is there still a temporary --

8          THE PLAINTIFF:  The status is for my daughter every

9     Saturday from 12:00 to 5:00, and I have --

10          THE COURT:  Okay.  So there is a -- there is an order

11     in place with -- which sets terms of custody and terms of

12     visitation; is that correct?

13          THE PLAINTIFF:  Yes, sir.

14          THE COURT:  All right.  Is there any scheduled court

15     proceeding or is that a completed proceeding?

16          THE PLAINTIFF:  No, there's a motion for

17     February 23rd.  My daughter has autism.

18          THE COURT:  Yes.

19          THE PLAINTIFF:  She is high functioning.

20          THE COURT:  Uh-huh.

21          THE PLAINTIFF:  There's an order of February 13th,

22     excuse me, for -- to switch to ABA services to give her more

23     time --

24          THE COURT:  Uh-huh.

25          THE PLAINTIFF:  -- because she's only getting two

1     hours a week now, and she recommended ten hours --

2              THE COURT:  Okay.

3              THE PLAINTIFF:  -- but she -- they're only giving her

4     two hours.

5              And then there's another -- there's for more parenting

6     time on March 3rd.

7              THE COURT:  Okay.  So there are pending proceedings

8     still pending in Massachusetts.

9              Is anything still pending in New Hampshire?

10             THE PLAINTIFF:  No, there isn't.

11             THE COURT:  Okay.

12             THE PLAINTIFF:  And there's no pending child support

13     order.  I pay child support every week.  That's --

14             THE COURT:  That is completed?

15             THE PLAINTIFF:  Yes.

16             THE COURT:  Okay.  So -- so the harms that you're

17     claiming, as near as I can tell, relate to Massachusetts

18     courts' decisions, not New Hampshire decisions, or does it

19     apply to both?

20             THE PLAINTIFF:  It's Massachusetts.

21             THE COURT:  Okay.

22             THE PLAINTIFF:  Judge Phelan.

23             THE COURT:  All right.

24             THE PLAINTIFF:  Your Honor, if you look at the

25     Massachusetts transcripts on November 3rd.

1        On November 15th, I was supposed to go into New

2   Hampshire and have parenting time and a child support order.

3   If you look at the transcripts --

4        THE COURT:  Those are the transcripts you submitted

5   previously?

6        THE PLAINTIFF:  Yes.

7        THE COURT:  And they show Judge Phelan saying there's

8   something pending in New Hampshire, I need to find out what

9   that is before I could rule.

10        THE PLAINTIFF:  Absolutely, so --

11        THE COURT:  So what's wrong with that?

12        THE PLAINTIFF:  He put in a full child support

13   order --

14        THE COURT:  Okay.

15        THE PLAINTIFF:  -- before he -- before he got informed

16   of what was going on in New Hampshire.  And that's where the

17   rights violation happened, because on the 15th they dismissed

18   the case believing that Massachusetts picked up jurisdiction.

19        The UCC, the PKPA, Title IV-D all say --

20        THE COURT:  Right.  These are not statutes I read that

21   often because I don't sit in a family court.  Tell me what they

22   are and walk me through --

23        THE PLAINTIFF:  All right.

24        THE COURT:  -- how they apply here.

25        THE PLAINTIFF:  The uniform child custody jurisdiction

1       act --

2              THE COURT:  Uh-huh.

3              THE PLAINTIFF:  -- and the parental prevention

4       kidnapping act.

5              THE COURT:  Uh-huh.

6              THE PLAINTIFF:  They were put in place so someone

7       couldn't, ah, forum shop --

8              THE COURT:  Uh-huh.

9              THE PLAINTIFF:  -- right, to another state for a

10      more -- more child support.  New Hampshire lasts until 18 years

11      old.  Massachusetts, it can last until 23 years old.  So

12      it's -- it's called forum shopping.

13             All states adhere by those statutes --

14             THE COURT:  Uh-huh.

15             THE PLAINTIFF:  -- or -- or laws saying that if

16      another state is exercising -- continuously exercising

17      jurisdiction, they defer it until -- until the end of it unless

18      they give up jurisdiction.

19             THE COURT:  Uh-huh.

20             THE PLAINTIFF:  In this case, Massachusetts put in an

21      order and got New Hampshire to dismiss the case when I would

22      have been seeing my daughter on -- after the 15th.  And not

23      only that, your Honor, the mother was receiving child support.

24      If you look at the transcripts, I was paying the mother child

25      support --

1           THE COURT:  Yeah.

2           THE PLAINTIFF:  -- before -- right -- right when she

3    left.  So there was no need for an order.

4           THE COURT:  Okay.  But --

5           THE PLAINTIFF:  So I --

6           THE COURT:  Right, to the extent that you are unhappy

7    with the orders, either the dismissal in New Hampshire or the

8    orders that were entered in Massachusetts, have you appealed

9    those?

10          THE PLAINTIFF:  I did appeal the one in New Hampshire,

11   but the one in --

12          THE COURT:  And what happened?

13          THE PLAINTIFF:  They said Massachusetts has

14   jurisdiction --

15          THE COURT:  Okay.

16          THE PLAINTIFF:  -- because they had the child.  So

17   what happened was after they dismissed it, I appealed it,

18   Massachusetts put in a child support order.

19          THE COURT:  Okay.  So --

20          THE PLAINTIFF:  A second order.

21          THE COURT:  Right, so New Hampshire has ended up

22   deferring to Massachusetts on -- on jurisdiction?

23          THE PLAINTIFF:  Yes.

24          THE COURT:  All right.  And with respect to

25   Massachusetts, have you appealed that?

1          THE PLAINTIFF:  I haven't, your Honor.

2          THE COURT:  Okay.

3          THE PLAINTIFF:  And I'm going -- and I'm going to tell

4    you why --

5          THE COURT:  So --

6          THE PLAINTIFF:  -- because once you start appealing,

7    ah, custody cases, it prolongs you from seeing your child.

8    Right.

9          THE COURT:  I understand that.

10          THE PLAINTIFF:  Okay.

11          THE COURT:  On the other hand, how is it that -- I'm

12    in a separate and parallel court system.  And typically, I

13    don't get involved in the activities of the state court at all

14    unless a case is removed from state court to my court.  And

15    removal is not an option here because this is a domestic

16    relations matter as it stands in state court.

17          So -- so if it's not my case in the sense that the

18    case has to pend in Massachusetts, what is it you want me as a

19    federal judge to do and how is it that you think I have

20    authority to do that?

21          THE PLAINTIFF:  You know, we can end this -- we can

22    end this whole thing now.  And I offered -- I offered, you

23    know, to talk to the two attorneys to end it.

24          I can -- if I could get a declaration saying they

25    violated my rights, which he did --

1        THE COURT:  Well, excuse me.  Mr. Speight --

2        THE PLAINTIFF:  Yeah.

3        THE COURT:  -- I see you turning around to look at

4   others, and I know there are others concerned, but when you're

5   addressing the Court you address only the Court.

6        THE PLAINTIFF:  All right.  If I could get a

7   declaration saying that he violated my equal protection due

8   process right of the Fourteenth Amendment --

9        THE COURT:  Why -- why would they give you that?  They

10  disagree.

11       THE PLAINTIFF:  Well, it -- it can end right now.  We

12  can say --

13       THE COURT:  No, no, I'm not presiding over settlement

14  discussions.

15       THE PLAINTIFF:  You asked me.  Sir, you -- sir, you --

16       THE COURT:  No, I'm asking you what it -- what

17  authority, if any, you think I have to tell the state court

18  what to do or to award damages based on what happened in a

19  state court proceeding?

20       THE PLAINTIFF:  I'm not -- I'm not asking you

21  to -- can you repeat that, please, because I --

22       THE COURT:  What authority do you think I have to

23  award damages --

24       THE PLAINTIFF:  Yeah.

25       THE COURT:  -- based on something that happened in

1    state court that you feel was wrong?

2             THE PLAINTIFF:  You do have the authority because --

3             THE COURT:  What is the basis --

4             THE PLAINTIFF:  -- federal --

5             THE COURT:  -- of authority that you're invoking?  Is

6    it 1983?

7             THE PLAINTIFF:  Yes.

8             THE COURT:  Okay.

9             THE PLAINTIFF:  And you have federal oversight on PKP,

10   the Parental Kidnapping Prevention Act.  You have oversight on

11   the uniform child custody jurisdiction act.  Massachusetts is

12   the only state that came up with their -- their own --

13            THE COURT:  Address the Court.  I'm up here.

14            THE PLAINTIFF:  Sorry.  Massachusetts is the only

15   state that didn't adhere to the UCCJEA act.  They came up with

16   their own --

17            THE COURT:  All right.

18            THE PLAINTIFF:  -- but -- but the federal court has

19   oversight --

20            THE COURT:  Where does the oversight authority come

21   from other than 1983?

22            THE PLAINTIFF:  All right.  It comes from *Martinez

23   versus Cui*, 608 F.3d --

24            THE COURT:  You need to go slowly for me.  I -- I

25   actually am taking notes here.  *Martinez versus* --

1          THE PLAINTIFF:  C-U-I, 608 F.3d 54, 64, (First Circuit

2     2010).  Section 1982 imposes liability on anyone under the

3     color of state law subjects or causes to be subject on an

4     individual to -- deprivation of federal rights.

5          And then you have *Hafer, H-A-F-E-R, versus Melo*, 502

6     U.S. 21 (1991), state officials can be sued in their personal

7     capacity for actions taken under the color of state law that

8     violated constitutional rights.

9          Then you have *Burke, B-U-R-K-E, versus Rhode Island*,

10    and that's 935 F.Supp.2d, 105 (2013).  A federal court

11    addresses claims in due process violations.  State officials

12    who acted improperly in family court proceedings.

13         Then you have *Pierce versus Underwood*, 487 U.S.

14    552-558.  Abusive discretion occurs when a court makes a clear

15    error in judgment and exceeds a bound reason.

16         And then if you -- we can -- if you give me one

17    second, I can find where you have authority under UCCJEA act

18    and Title IV-D.

19         THE COURT:  And is that -- I didn't see general

20    supervisory authority pled in your complaint.  What I saw was a

21    1983 claim --

22         THE PLAINTIFF:  Yes.

23         THE COURT:  -- am I right about that?

24         THE PLAINTIFF:  Yes.

25         THE COURT:  Okay.

1          THE PLAINTIFF:  It's a civil rights violation.

2          THE COURT:  Right, but it's a claim for damages under

3     1983.

4          THE PLAINTIFF:  Yes.

5          THE COURT:  You say, I was harmed by something that

6     happened to me that was done by -- arguably by state actors or

7     done in connection with state court proceedings, and you want

8     damages for that --

9          THE PLAINTIFF:  Yes.

10          THE COURT:  -- Is that correct?  Okay.

11          THE PLAINTIFF:  Yes.

12          THE COURT:  All right.

13          THE PLAINTIFF:  Do you want me to cite the cases where

14     you have federal oversight for that?

15          THE COURT:  Yes, please.

16          THE PLAINTIFF:  All right.

17          THE COURT:  And again go slowly.  It's just faster for

18     me to check my notes than to pull up a transcript.

19          (Pause.)

20          THE PLAINTIFF:  All right.  And it is *Thompson versus*

21     *Thompson*, 484 U.S. 174 (1988).  PKPA, Parental Kidnapping

22     Prevention Act, specifically creates federal oversight to

23     prevent jurisdictional disputes and constitutional violations

24     in custody and support orders.

25          Then you have *BS versus Somerset County*, 704 F.3d,

1  250, 271.

2          THE COURT:  704 F.3d.

3          What is it?

4          THE PLAINTIFF:  250 --

5          THE COURT:  Uh-huh.

6          THE PLAINTIFF:  -- comma, 271, Third Circuit (2013).

7  Federal courts have jurisdiction to prevent parental -- protect

8  parental rights under 1983 when state actors interfere with

9  constitutional rights.

10          Then you have *Middleton versus Middleton*, 227 Va. 82

11  (1984).  Federal oversight is necessary when states fail to

12  adhere to the UCCJEA or PKPA requirements for determining

13  jurisdiction.

14          So, your Honor, if I may elaborate on Title IV-D.

15          THE COURT:  Okay.  Yeah, explain how it comes to bear

16  here because you're telling me you don't want me to change or

17  review the Massachusetts court ruling.

18          What you're looking for is damages against actors who

19  you say harmed you or deprived you of -- of constitutional

20  rights, correct?

21          THE PLAINTIFF:  Yes.

22          THE COURT:  All right.  So you -- you're not asking

23  for me to make a ruling that would change the ruling of the

24  state court; is that correct?

25          THE PLAINTIFF:  It is correct because if I was going

1    to do that, Rooker-Feldman would apply here.

2            THE COURT:  I see.  And your view is Rooker-Feldman

3    doesn't apply if you're only seeking damages?

4            THE PLAINTIFF:  Yes.

5            THE COURT:  All right.

6            THE PLAINTIFF:  So if I can elaborate on Title IV-D, I

7    can --

8            THE COURT:  Well, how does it -- how does it fit in to

9    this?

10           THE PLAINTIFF:  It -- it fit -- it fits in.  I'll tie

11   it in right now.  I have a 35-page document from Hawaii where

12   Hawaii is starting to do this too.  So Title IV-D overseas the

13   UCCJEA act and the PKPA act, and Title IV-D pays the state for

14   revenue that they get from child support.  So it's an

15   incentive, the states to get people under their child support.

16   Right.  Because they're getting 66 percent back of everything

17   they -- they spent, so, I mean, it's an incentive for them to

18   get paid.

19           So it's a Social Security Act Title IV-D.  And what

20   states are doing is they're -- it's an incentive for them to

21   get money so they're violating people's rights to get them into

22   their state for child support.  And like I said, Massachusetts

23   lasts until 23, and New Hampshire lasts until 18, so it's -- it

24   is an incentive to make money off the state.  And I'll explain

25   how they do it.

1            You go into court.  Every time you mediate with

2     probation.  Probation charges the federal government money

3     because they always say child support's an issue.  So

4     Massachusetts did this to get me to be under their child

5     support order.  And what they did was they violated my rights.

6     And it's happening all over the country, your Honor.  And

7     here's what it's doing.

8            So on November 15th, I was going to see my daughter.

9     I was going to get a parenting plan in place and a child

10    support order.

11           THE COURT:  That was the hearing you were expecting to

12    have in New Hampshire?

13           THE PLAINTIFF:  Yes.

14           THE COURT:  All right.

15           THE PLAINTIFF:  So on November 3rd when Judge Phelan

16    put in the order and got my case dismissed out of New

17    Hampshire, it prolonged me from seeing my daughter for

18    30 months.

19           So my daughter might have a claim against Eric

20    Stephanie and all the defendants too.  It violated both of our

21    rights.  It violated my -- so the equal protection and the due

22    process, which had violated the Fourteenth Amendment.  But then

23    further --

24           THE COURT:  When you say -- I'm going to slow you down

25    here.  Typically, when I hear people talk about due process,

1    they're describing somebody who failed to follow a particular

2    state law.  In other words, the process that was due is the

3    process that's provided by a state.  And typically the remedy,

4    if it's a judicial actor, is through appeal within the judicial

5    system to say you got it wrong, correct it.

6        Why wouldn't that be the case here?

7        THE PLAINTIFF:  Because, your Honor, here and, ah, you

8    have a chance, you have a chance right now, because this is a

9    dangerous precedent that they're doing where they're just

10   overstepping people's rights.  You have a chance in this case

11   once I prove, and I can prove it, that they violated my rights,

12   and this case goes on the books, other people won't be

13   prolonged from seeing their kids and -- and states won't

14   overstep boundaries and violate people's rights for -- for

15   money, you know, and that's what it's about.

16       It's a -- you know, I don't care -- your Honor, I

17   don't care about the money.  I don't need the money.  Right.  I

18   want the declaration saying they violated my rights because

19   they did, you know, and, ah, they -- they didn't follow their

20   law.  Massachusetts General Law Chapter 209B, Section 2D, a

21   court of the Commonwealth shall not exercise jurisdiction in

22   any custody proceeding commenced during the pendency of a

23   proceeding in a court of another state where such court of that

24   state is exercising jurisdiction consistently.

25       I mean, it's clear as day what they did.

1        THE COURT:  Well, I've read the transcript.  Judge

2   Phelan says he's going to wait and find out what's happening

3   with New Hampshire and puts things on hold.

4        THE PLAINTIFF:  But he put an order in, your Honor.

5   He put a child support order in.  He didn't wait.

6        Under the PKPA act and the UCCJEA act, it says

7   courts are -- states are supposed to talk to each other.

8        THE COURT:  Uh-huh.

9        THE PLAINTIFF:  Phelan didn't do that.  He just put

10  the order in.  And when he put the --

11       THE COURT:  Wasn't that order then lifted?

12       THE PLAINTIFF:  Excuse me?

13       THE COURT:  Wasn't that order lifted?

14       THE PLAINTIFF:  It was vacated after the damage was

15  done.

16       THE COURT:  The damage being the period of time during

17  which you had to pay under that order?

18       THE PLAINTIFF:  No.

19       THE COURT:  What was the damage?

20       THE PLAINTIFF:  The -- the dismissal of the New

21  Hampshire custody and child support petition, which I have the

22  petition right here.  I went down to Derry Family Court.  I've

23  read this petition over the phone to Judge Phelan, and the

24  child support box is checked off.  And that's what he wanted to

25  see.

1          THE COURT:  Uh-huh.

2          THE PLAINTIFF:  But he didn't wait, your Honor.  He

3    put the order in; and when he put the order in, he violated my

4    rights.  And he violated my child's rights.

5          THE COURT:  Okay.  All right.  I think I understand

6    your argument.  I'm going to look at the cases you've cited.

7    I'm going to hear from the defendants now.

8          Anything else you want to add right now?

9          THE PLAINTIFF:  The mother.  The mother -- ah, Amanda

10   Kaelblein hasn't answered the complaint.

11         THE COURT:  Uh-huh.

12         THE PLAINTIFF:  She didn't answer the original

13   complaint in over 180 days, and she hasn't answered this

14   complaint.  They're hoping that the case gets dismissed so her

15   case will get dismissed.

16         She needs to be put in default, Judge, and

17   she's -- she is definitely disrespecting the Court.

18         Thank you, your Honor.

19         THE COURT:  Thank you.

20         All right.  Ms. Dooley, I'll hear -- I'll hear from

21   you first.

22         MS. FONTAINE DOOLEY:  Thank you, your Honor.

23         So as has been made clear today and in the pleadings,

24   this case started with a child custody dispute that began in

25   May of 2022.  That dispute was between plaintiff and defendant

1   Amanda Kaelblein.  My clients are the parents of Amanda

2   Kaelblein.

3            The most recent court order issued just a couple weeks

4   ago on January 13th of 2025.  That order continued to give the

5   plaintiff limited parenting time and specifically stated he was

6   not to have overnights, and he was not to bring the child to

7   New Hampshire.

8            So the Court is continuing to limit Mr. Speight's

9   parenting time with the child after many hearings, a guardian

10  ad litem investigation, and ample opportunity for Mr. Speight

11  to present exactly the arguments he's now seeking to present to

12  the federal court in state court.

13           So as your Honor seemed to allude to, the allegations

14  against my client are incredibly -- my clients are incredibly

15  vague.  We've heard that they're acting in concert, they're

16  providing unspecified false statements; and particularly those

17  false statements appear to all occur, your Honor, at hearings

18  at which Mr. Speight is present and fully able to challenge the

19  veracity of anything stated on the record.  So he had the

20  opportunity at those hearings to bring up contrary evidence, to

21  bring up contrary points that he wanted to make.

22           The Court ultimately found for Amanda Kaelblein.

23  Whether or not they relied on my clients' statements is

24  completely unclear is not specified in the complaint and is not

25  noted by any of the exhibits provided.  And so in essence he

1    has failed to -- to show that my clients, first of all, made

2    false statements because we don't know what they are.

3         Second --

4         THE COURT:  Well, he doesn't have to show it.  All he

5    has to do is put together plausible allegations.

6         MS. FONTAINE DOOLEY:  I should say he has failed to

7    plead it, your Honor.

8         THE COURT:  Okay.

9         MS. FONTAINE DOOLEY:  He has failed to plead that my

10   clients have made the false statements --

11        THE COURT:  Uh-huh.

12        MS. FONTAINE DOOLEY:  -- specifically what they are.

13        And as your Honor knows, the con- -- the -- the

14   standard for a conspiracy pleading, which is the only claim he

15   has brought against my clients, is higher than a simple

16   litigation claim.

17        Moving to the subject-matter jurisdiction question, I

18   would note I -- so my read is that *Sutter* remains good law.  It

19   was cited as recently as 2016 favorably in *Irish v. Irish* in

20   the First Circuit.  And that case really mirrors the facts in

21   this case.  You have a child custody dispute.  In that case

22   actually the -- the prior order was in full force and effect.

23   No one was really disputing that, but the father spirited the

24   child away from the state.  And the federal court still

25   declined to intervene because it was a state court matter.  It

1   was a custody dispute that was ongoing between the parties.

2          Even more so here where if your Honor were to begin to

3   make rulings adverse to my clients or adverse to Mr. Speight,

4   you would potentially place the federal court in direct

5   conflict with the ongoing state court proceedings in

6   Massachusetts.

7          I would also note that, as Mr. Speight just stated,

8   the child custody order that he claims was at the root of all

9   this, and I will say -- and this is part of the difficulty of

10  responding.  It is a bit unclear what exactly is being alleged

11  in the complaint, but based on what was just stated I will

12  note, as your Honor did, that the child support order

13  that -- on which he bases apparently his entire complaint was

14  in effect for a grand total of 15 days.

15         He seems to say that the result of that child support

16  even being in effect for a mere two weeks was to deprive New

17  Hampshire of jurisdiction.  That is not pled in the complaint,

18  and that is not clear from the record, the materials that he

19  has provided thus far.  And so I would argue it's just not a

20  proper basis for the complaint to continue here.

21         I would also note, and this is somewhat afield, but

22  the -- the question of jurisdiction for child support rests not

23  on the UCCJEA, but on the Interstate Family Support Act, which

24  New Hamp- -- which both New Hampshire and Massachusetts have

25  enacted.

1           If your Honor has any questions.

2           THE COURT:  Well, how -- well, how does that affect

3     federal courts?

4           MS. FONTAINE DOOLEY:  Ah, so I don't believe it does,

5     your Honor, but just to -- as a point of clarity, there are two

6     separate bases for jurisdiction, and they are -- they reside in

7     two separate statutes.  It's not simply if you have child

8     custody jurisdiction you have child support jurisdiction.  They

9     may differ.

10          THE COURT:  Got it.  Thank you.

11          And, Mr. Martignetti, you represent --

12          MR. MARTIGNETTI:  Ah, thank you, your Honor.

13          I represent Defendant Eric Stephanie.  He's an

14    attorney --

15          THE COURT:  Right.

16          MR. MARTIGNETTI:  -- for the Mass. Department of

17    Revenue.  He's the attorney who prosecuted the child -- the

18    child support complaint against Mr. Speight in --

19          THE COURT:  Right.

20          MR. MARTIGNETTI:  -- Massachusetts.

21          I think your Honor has it exactly correct on the --

22          THE COURT:  Let me -- don't assume I have anything --

23          MR. MARTIGNETTI:  Okay.

24          THE COURT:  -- but do you also represent Judge Phelan,

25    or no?

1          MR. MARTIGNETTI:  So, Judge Phelan was originally in

2     this case.

3          THE COURT:  Uh-huh.

4          MR. MARTIGNETTI:  And the plaintiff, Mr. Speight,

5     agreed to voluntarily dismiss him.  I think essentially

6     agreeing that any claims against Judge Phalen would be barred

7     by absolute judiciary.

8          THE COURT:  Uh-huh.  Now, is there a pending request

9     though to add Judge Phelan back in?  I'm not clear on where we

10    stand on that.

11         MR. MARTIGNETTI:  I'm not aware --

12         THE COURT:  If I can interrupt you.

13         Mr. Speight, was that -- I saw a reference to that.

14         THE PLAINTIFF:  Ah, excuse me, if I say your name

15    wrong.  Mr. Martignetti said it was Judge Phelan that put in

16    the order.

17         THE COURT:  Right.

18         THE PLAINTIFF:  Right.

19         THE COURT:  But that's -- my question is are you suing

20    Judge Phelan?

21         THE PLAINTIFF:  I -- I said to the Court if they

22    believe that Judge Phelan is guilty, he should be held liable

23    with the rest of the defendants doing, and I would ask the

24    Court to direct me to amend the complaint and add him onto the

25    complaint.

1          THE COURT:  I see.  Okay.  Because I was trying to

2     make sense of -- I did see that, and I just wasn't certain --

3          THE PLAINTIFF:  Judicial immunity doesn't protect him

4     for injunctive and declaratory relief when he violates

5     someone's constitutional rights.

6          THE COURT:  I believe it does, but we'll -- in any

7     case, I'm going to deny -- I'm not going to order you to amend

8     the complaint to add him back in.  I find that he has been

9     dismissed, and that's where things stand, so I'm not going to

10    change that order.

11         All right.  I'll -- I'll hear further then from

12    Mr. Martignetti.

13         MR. MARTIGNETTI:  Thank you, your Honor.

14         So I think this is Rooker-Feldman because the child

15    support complaint that is the subject of Mr. Speight's amended

16    complaint in this court, I think the -- that action has

17    concluded.  It has come to a conclusion.  So I think this is

18    more Rooker-Feldman than it is Younger.

19         THE COURT:  Okay.

20         MR. MARTIGNETTI:  And right in Mr. Speight's amended

21    complaint, it's paragraph 2H, he says that the child support

22    orders that were entered by Judge Phelan were not legally

23    authorized, and that right there implicates Rooker-Feldman

24    because it would essentially require this court, a federal

25    court, to in substance defeat or negate the child support

1   orders that were entered in Massachusetts.  So that's

2   Rooker-Feldman.  That dismisses all of the claims against

3   Mr. -- against Attorney Stephanie whether in his individual

4   capacity or in his official capacity.

5          We also, of course, have an Eleventh Amendment issue

6   to the extent that Mr. Speight is seeking to assert claims

7   under Section 1983 against Attorney Stephanie in his official

8   capacity.  Those claims are plainly barred by the Eleventh

9   Amendment and (indiscernible) --

10          THE COURT:  Let me ask you this.  There's a -- a

11  chicken-and-egg problem with the Eleventh Amendment claims, and

12  I see some division among the courts on this.

13          My life is a lot easier if I lump in questions of

14  Eleventh Amendment immunity with other kinds of immunity

15  arguments than if I treat it as a subject-matter jurisdiction

16  threshold issue, because if I treat it as a subject-matter

17  threshold issue arguably it affects the jurisdiction I may have

18  over other pieces of this case.

19          Do you see any problem with noting the issue and

20  addressing it, but not necessarily treating it as a first step

21  or a gateway question for exercise of subject-matter

22  jurisdiction?

23          MR. MARTIGNETTI:  Yes, that's fine with me, your

24  Honor, and I understand --

25          THE COURT:  All right.

1          MR. MARTIGNETTI:  -- that you treat it as a threshold

2     issue --

3          THE COURT:  Right.

4          MR. MARTIGNETTI:  -- and you might not rule on the

5     other issues, but I also don't want to waive it, so I think the

6     way you're handling it or proposing to handle it --

7          THE COURT:  Uh-huh.

8          MR. MARTIGNETTI:  -- is the correct way, and I'm

9     perfectly agreeable to that.

10          THE COURT:  All right.

11          MR. MARTIGNETTI:  So that's on the official capacity.

12          Individual capacity claims also barred by absolute

13     prosecutorial immunity.  So Attorney Stephanie is an attorney

14     for the Department of Revenue.  The Department of Revenue is

15     the Commonwealth agency that is statutorily charged with not

16     only bringing child support complaints, but enforcement of

17     child supports orders and modification of child support orders,

18     and that's plainly what Attorney Stephanie was doing when he

19     filed the child support complaint against Mr. Speight in

20     Massachusetts.  That's plainly what Attorney Stephanie was

21     doing when he argued before Judge Phelan in November.  And then

22     Judge Phelan subsequently entered a temporary order of support

23     and an amended temporary order of support.  Those are all

24     prosecutorial functions.

25          And I know Mr. Speight makes a passing reference to

1    the fact that Attorney Stephanie's actions were somehow

2    administrative, but they weren't.  I mean, he was prosecuting a

3    child support complaint on behalf of the child's mother.  He is

4    statutorily authorized to do that.  In fact, only the DOR can

5    do that in Massachusetts for this type of child support

6    complaint.  And so any individual claims against Attorney

7    Stephanie in his individual capacity should also be dismissed.

8         And just, finally, to wrap things up, I mean, there's

9    clearly, I think, a problem with the factual allegations in

10    Mr. Speight's amended complaint.  They do not have enough

11    factual heft to state any type of claim.

12         In fact, the main allegation against Attorney

13    Stephanie appears to be that he entered a child support order.

14    Well, we know that's not true.  He can't enter orders.  He's

15    not the judge.  The judge is the person who entered the orders.

16         THE COURT:  Although at the motion to dismiss stage,

17    Mr. Speight has alleged that happened, and you've pointed to

18    record documents that would appear to show Judge Phelan's

19    signature on something, but if the plaintiff has made an

20    allegation that really it was the prosecutor, not the judge,

21    don't I have to treat all allegations as true at this stage?

22         MR. MARTIGNETTI:  No, I don't think you do, your

23    Honor.  I think you have to treat well pleaded factual

24    allegations as true.  You do not have to treat allegations that

25    are obviously false as true, and I do think you can on a

1    motion -- even on a motion to dismiss look to the Court orders,

2    because they are matters of public record --

3              THE COURT:  Uh-huh.

4              MR. MARTIGNETTI:  -- and you can take judicial notice

5    of the fact that Judge Phelan was the one that entered the

6    order.

7              So you do not have to defer to an allegation that is

8    obviously false and belied by a public record that is the

9    judge's decision.

10             And as Attorney Fontaine duly pointed out, there's not

11   really anything other than conclusory allegations to allege

12   that type of things you need to allege to -- to prevail on a

13   civil rights conspiracy claim under Section 1983.  The mere

14   fact that Attorney Stephanie might have been successful in his

15   child support complaint action against Mr. Speight is not

16   enough to amount to a civil rights violation.

17             So for all those reasons, your Honor, the

18   complaint -- the amended complaint against Attorney Stephanie

19   should be dismissed.

20             Thank you.

21             THE COURT:  Thank you.

22             Ms. Fontaine Dooley, anything further?

23             MS. FONTAINE DOOLEY:  No, thank you, your Honor.

24             THE COURT:  Mr. Speight, anything else you'd like to

25   say?

1           THE PLAINTIFF:  Yes.  The -- so, your Honor,

2     he -- Mr. Martignetti entered paperwork with a typed-in

3     signature.  Whether Stephanie put in the order or not,

4     Stephanie lied in the transcripts, and I can prove that with

5     the email from Mike Ryan, the conversation between Michael Ryan

6     and Eric Stephanie.  Bad faith.  Even if he -- even if he

7     didn't put in the order, your Honor, he caused me to -- for my

8     rights to be violated.  So he --

9           THE COURT:  So --

10          THE PLAINTIFF:  -- was just as guilty.

11          THE COURT:  -- the causing he did was in his role as a

12    prosecutor.

13          He persuaded the judge to entered an order; is that

14    correct?

15          THE PLAINTIFF:  Well, if you look at Massachusetts

16    law, they say that all child support pleadings are

17    administrative.  When -- when Stephanie drafts a child support

18    order and gives it to Phelan, it's administrative.  It's not

19    prosecute -- prosecutal (phonetic).  Prosecutal is when I get

20    arrested for a crime and the prosecutor prosecutes me.  It's

21    not drafting a child support order and handing it to the judge

22    knowing that you're going to violate my rights and still

23    handing it in.  And that's why he can be held liable.

24          THE COURT:  Well, isn't that something that

25    prosecutorial officials do all the time, which is a judge says,

1    okay, I'm prepared to rule now.  I want to see a draft order;

2    and if it's acceptable, I'll sign it.

3              Isn't that exactly what public officials do all the

4    time?

5              THE PLAINTIFF:  I don't believe so.

6              THE COURT:  As -- as prosecutors?

7              THE PLAINTIFF:  I believe that it says that

8    Massachusetts -- it states that Massachusetts child support

9    orders are administrative.

10             THE COURT:  It's an administrative proceeding.

11             THE PLAINTIFF:  Yes, so --

12             THE COURT:  All right.  So -- okay.  I think I

13   understand your argument.

14             THE PLAINTIFF:  So he can be held liable, and just

15   because it -- if you find he can't be held liable under one

16   thing, he still can be held liable under another.  I mean,

17   he's --

18             THE COURT:  Well, it -- I think I'm going to rule

19   on -- on that based on the nature of there's -- there's two

20   ways somebody can be charged.

21             One is in their official capacity.  And the problem

22   with official capacity is it's pretty much the same thing as

23   suing the state because basically you're not really suing the

24   person.  You're saying the person who holds that office has to

25   do something.

1          The other is in the individual capacity when you say

2     somebody had a job to do.  They had official authority, but

3     they did it in a way that was violative of constitutional

4     rights.

5          And I take it that's your primary argument is

6     that -- that Mr. Stephanie did his job, but did it in a way

7     that you say violated his constitutional rights?

8               THE PLAINTIFF:  Yes.

9               THE COURT:  Okay.

10               THE PLAINTIFF:  Yes.  Chief Justice Marshall said it,

11     the state isn't named as a party.  It's not a suit against the

12     state.

13               THE COURT:  There's plenty of authority under the

14     Eleventh Amendment that goes beyond that, but leaving that

15     aside your argument here is that in his individual capacity he

16     acted in some way that was beyond or outside of or in violation

17     of his authority as a -- as a prosecutor?

18               THE PLAINTIFF:  Yes.

19               THE COURT:  Okay.  I understand the argument.

20          All right.  Anything further?

21               THE PLAINTIFF:  No, thank you, your Honor.

22               THE COURT:  All right.  I'm going to take this matter

23     under advisement.  I am going to issue a written decision on

24     it.

25          Mr. Speight, I think in the likelihood, and I'm not

1    ruling from the bench, but I am very skeptical that a federal

2    court has the authority to rule in a case where the question is

3    did bad things happen in the state courts that resulted in

4    judgments or decisions by the state court that a plaintiff says

5    were harmful to them.  I -- I am very skeptical that I have

6    authority to do that as a federal court.

7            Typically, the only federal court that can review

8    state court decisions is the U.S. Supreme Court, and that's in

9    appeals through the state court system up to the U.S. Supreme

10   Court, but federal courts like the United States District Court

11   do not ordinarily sit in judgment or review of the activities

12   of the state court.

13           So just by way of explanation, I think that's where

14   this is likely to go, but I'm going to do some more research.

15   I want to spend time reading the cases that you've cited to

16   familiarize myself with the various propositions that you've

17   raised, but I just want you to understand that in all

18   likelihood that's where I see this going, and it's based -- I

19   wasn't there.  I don't know what happened in state court.  I've

20   seen bits and pieces of transcript, but it is typically not my

21   job, and I don't have the power to second guess or decide

22   what -- whether a state court got something right or not.  And

23   that I don't see any way to decide this case without making a

24   judgment about whether a state court got it right or not.

25           So that's -- that's where this is likely going just so

1    you understand.

2          THE PLAINTIFF:  All right.  And I understand that,

3    your Honor, but you do have federal oversight, and I will be

4    appealing it if it gets dismissed.

5          THE COURT:  Yeah, I understand that.  That -- that is

6    your right.

7          THE PLAINTIFF:  Yeah.

8          THE COURT:  All right.  We'll be in recess.

9          THE CLERK:  All rise.  We are now in recess.

10          MR. MARTIGNETTI:  Thank you, your Honor.

11          (At 2:54:40 p.m., the audio recording ends.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           C E R T I F I C A T E

2

3              I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4     certify that the foregoing transcript is a true and accurate

5     transcription prepared to the best of my skill, knowledge, and

6     ability from the official electronic sound recording of the

7     proceedings before Magistrate Judge Paul G. Levenson in the

8     above-entitled matter.

9

10

11     /s/ Marianne Kusa-Ryll                        4-15-2025

12     Marianne Kusa-Ryll, RDR, CRR                    Date

13     Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25