UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL SEAN SPEIGHT III,

    *Plaintiff,*

v.

AMANDA KAELBLEIN, MICHAEL
KAELBLEIN, NANCY KAELBLEIN,
and ERIC STEPHANIE,

    *Defendants.*

No. 24-cv-12363-PBS

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS

LEVENSON, U.S.M.J.

Pro se Plaintiff Michael Sean Speight III brings this 42 U.S.C. § 1983 action against

Amanda Kaelblein, the mother of his minor child ("V.S."); Amanda's parents, Michael and

Nancy Kaelblein; and Eric Stephan,[1] a Massachusetts Department of Revenue ("Massachusetts

DOR") attorney, in both his official and individual capacity (collectively, "Defendants").

Plaintiff alleges that Defendants deprived him of his constitutional rights during child custody

and support proceedings in Massachusetts Probate and Family Court. Presently at issue are

Michael and Nancy Kaelblein's Motion to Dismiss (Docket No. 70) and Attorney Stephan's

Motion to Dismiss (Docket No. 81).

All of Plaintiff's claims are based on alleged wrongdoing in connection with proceedings

before the Massachusetts Probate and Family Court. Although the claims are worded in ways

---

[1] Defendant Stephan is misnamed in the case caption as Eric Stephanie.

that suggest actionable wrongdoing, all of the claims challenge—collaterally—rulings by the Massachusetts Probate and Family Court. As discussed below, federal courts generally do not interfere with the operation of state courts. Even when allegations are couched as constitutional claims, federal lawsuits ordinarily do not provide an avenue for relitigating or second-guessing state court decisions. As a matter of settled doctrine, this Court cannot award relief when doing so would require a finding by this Court that invalidates or otherwise contradicts orders entered by the Massachusetts Probate and Family Court.

Accordingly, I recommend dismissing Plaintiff's claims against Defendants.

## I.    Background

### A.    Factual Background

As best as can be gleaned from the Amended Complaint, from June 2021 through May 2022, Plaintiff lived with Amanda Kaelblein and their minor child, V.S., in Derry, New Hampshire. Docket No. 66-1, ¶ 2(A). On May 28, 2022, after the relationship between Plaintiff and Amanda deteriorated, Amanda took V.S. to Massachusetts without Plaintiff's consent. *Id.* ¶ 2(B). Approximately one month later, on June 6, 2022, Plaintiff filed a petition regarding child custody and support in Derry Family Court in New Hampshire.[2] *Id.* ¶ 2(C).

Plaintiff alleges that, on November 3, 2022, Attorney Stephan "had a hearing" regarding child support before Judge George Phelan of the Massachusetts Probate and Family Court. *Id.*

---

[2] According to the transcript of a proceeding before the Massachusetts Probate and Family Court, there was a dispute as to whether the petition that Plaintiff filed in Derry Family Court concerned both child custody and support, or just child custody. *Compare* Docket No. 85-3, at 18:17–18 (Plaintiff's contention that the New Hampshire case concerned both child custody and support), *with id.* at 22:25–23:9 (Attorney Stephen's representation that child support was not pled in New Hampshire). For present purposes, I accept as true Plaintiff's claim that the petition he filed in Derry Family Court concerned both child custody and support. *See Vega-Encarnación v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003) ("[A] district court is obliged to accept the factual allegations contained in the complaint as true.").

¶ 2(D). In Plaintiff's submission, he notes that Judge Phelan stated that there would be no child support order put in place until he reviewed the petition that Plaintiff had filed in Derry Family Court on June 6, 2022.[3] *Id.* Plaintiff alleges that, despite this "specific instruction[]," Attorney Stephan "issued a child support order."[4] *Id.* Plaintiff claims that he "confronted" Attorney Stephan over email "regarding the improper child support order" and that, on November 18, 2022, Attorney Stephan "admitted it was not the judge[']s intention and vacated [the child support order]."[5] *Id.* ¶ 2(F).

On November 15, 2022, a hearing was held in Derry Family Court regarding Plaintiff's request for "temporary orders" that would "reunite[ him] with V.S." *Id.* ¶ 2(E). Following the

---

[3] Plaintiff has submitted a transcript of the November 3, 2022, Massachusetts Probate and Family Court proceeding, which appears to support this contention. *See* Docket No. 85-3, at 23:17–24:8 ("I'm going to need a copy from the New Hampshire Court of the document that was actually filed by Michael to see whether he actually checked the box that says child support. . . . So I'm not going to take any action right now about child support until I know definitively by getting a copy of the filing in New Hampshire by Michael to see whether he checked the child support box. So I'm going to continue this without any sort of order.").

[4] In connection with his motion to dismiss, Attorney Stephan asserts that it was Judge Phelan— not Attorney Stephan—who issued the Temporary Order of Support on November 3, 2022. *See* Docket No. 82, at 2. Attorney Stephan attached the Temporary Order of Support to his motion to dismiss papers, arguing that the Court may take judicial notice of it, as it "falls under the exception for matters of public record." *See* Docket No. 82, at 2 n.3 (quoting *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 666 n.33 (D. Mass. 2016)). The Temporary Order of Support appears to have been endorsed by Judge Phelan. *See* Docket No. 82-1.

[5] Here, too, Attorney Stephan's motion to dismiss papers provide additional—and in some cases conflicting—detail. Attorney Stephan contends that, on November 21, 2022, Attorney Stephan filed an ex parte motion to vacate the November 3, 2022, Temporary Order of Support. Docket No. 82, at 3. He further contends that, on November 30, 2022, Judge Phelan allowed the motion, but "only to clarify his order that weekly child support be paid directly from [Plaintiff] to [Amanda], rather than through the DOR." *Id.* Attorney Stephan has attached a copy of Judge Phelan's order, which appears to support Attorney Stephan's contentions. *See* Docket No 82-2.

Judge Phelan subsequently entered an Amended Temporary Order of Support. Docket No. 82, at 3; *see* Docket No. 82-3 (Amended Temporary Order of Support).

hearing, Plaintiff's petition was dismissed.[6] *Id.* Plaintiff alleges that the dismissal was based upon "false statements" that Plaintiff contends Amanda made to the Derry Family Court regarding Plaintiff's involvement in V.S.'s life and the length of time that she lived in New Hampshire with V.S. (among other things). *Id.* ¶¶ 2(E), 2(G).

As discussed further below, the Amended Complaint contains little in the way of specific, factual allegations regarding Amanda's parents, Michael and Nancy Kaelblein. Plaintiff alleges broadly that they "supported" Amanda and/or "supported" the "inconsistent statements" she allegedly provided during state court proceedings. *Id.* ¶ 2(G). Plaintiff further alleges that, as recently as August 2024, they "gave false and misleading statements to a Massachusetts Probate Court Clinician Jennifer Westbrook." *Id.* Plaintiff also claims that Michael and Nancy Kaelblein worked with their daughter, Amanda, to "keep the Plaintiff from V.S." *Id.*

### B.    *Brief Procedural Background*

Plaintiff sued Amanda Kaelblein, her parents Michael and Nancy Kaelblein, and Eric Stephan in the United States District Court for the District of New Hampshire on February 26, 2024.[7] Docket No. 1. Months later, on September 13, 2024, the case was transferred to the

---

[6] During oral argument on the pending motions to dismiss, Plaintiff represented that he had appealed the dismissal of the New Hampshire action, and that the resultant ruling was that Massachusetts—not New Hampshire—had jurisdiction.

[7] In his opposition to Attorney Stephan's motion to dismiss, Plaintiff repeatedly claims that he should be permitted to amend his complaint again to name Judge Phelan, an Associate Justice of the Massachusetts Probate and Family Court, as a defendant. *See, e.g.*, Docket No. 85-1, at 3 ("Judge George Phelan should be reinstated to the complaint, so no[] one escapes accountability."); *id.* at 13 ("[T]he Court should direct the plaintiff to amend the complaint to add [Judge Phelan's] name as a defendant . . . .").

During the motion to dismiss hearing on February 3, 2025, I ruled that, to the extent Plaintiff is moving for leave to file an additional amended complaint to include Judge Phelan as a defendant, that motion is denied. Plaintiff's original complaint had named Judge Phelan as a defendant (*see*

*Footnote continues on following page.*

United States District Court for the District of Massachusetts and assigned to Judge Saris, who referred the case to me for full pretrial proceedings and report and recommendation on dispositive motions. *See* Docket Nos. 49, 50, 52.

On October 4, 2024, I held a status conference, during which I proposed denying as moot the numerous pending motions (most of which had been filed by Plaintiff prior to the transfer to the District of Massachusetts) and allowing Plaintiff the opportunity to file an amended complaint. *See* Docket No. 63. No party objected to the proposal, so the pending motions (Docket Nos. 14, 16, 25, 26, 28, 30, 34, 35, 36, 46, 47, 56, 59, and 61) were denied—without prejudice— as moot, and Plaintiff was given until October 18, 2024, to file an amended complaint. Docket No. 63.

On October 16, 2024, Plaintiff moved to file an Amended Complaint and attached a document, labeled "Memorandum in Support of Motion to Amend Complaint," that set forth Plaintiff's Amended Complaint. *See generally* Docket No. 66-1.

In his Amended Complaint, Plaintiff outlines claims under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights during proceedings before the Massachusetts Probate and Family Court. *See id.* ¶ 3. Specifically, Plaintiff alleges that Massachusetts DOR Attorney Eric Stephan violated Plaintiff's due process rights by "issuing a child support order that was not authorized by the judge." *Id.* ¶ 3(A). As to Amanda, Michael, and Nancy Kaelblein,

---

Docket No. 1), but in July 2024, Plaintiff voluntarily dismissed Judge Phelan from the case, acknowledging that he would be "protected by immunity." Docket No. 38.

Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Having previously acknowledged Judge Phelan's judicial immunity from suit, and having voluntarily dismissed his claim against Judge Phelan, Plaintiff has suggested no reason that an additional amended complaint would make sense, let alone that justice requires allowing such a complaint.

Plaintiff alleges that they "conspired to deprive Plaintiff of his constitutional rights," and did in fact violate his due process and equal protection rights, by providing "false statements and supporting the issuance of an illegal child support order." *Id.* ¶ 3(B). Finally, Plaintiff claims that all Defendants worked "in concert" to violate "Plaintiff's constitutional rights to maintain a relationship with his child." *Id.* ¶ 3(C).

Plaintiff seeks compensatory damages—in the amount of $250,000 from Attorney Stephan and $100,000 "[f]rom all three of the Kaelblein[s]"—for "emotional distress, loss of parenting time, financial losses, and reputational harm." *Id.* ¶ 4(A). He also seeks punitive damages for Defendants' "willful, malicious, and reckless disregard" for Plaintiff's constitutional rights. *Id.* ¶ 4(B). Additionally, Plaintiff seeks a declaratory judgment that Defendants violated Plaintiff's constitutional rights. *Id.* ¶ 4(C).

On November 6, 2024, Michael and Nancy Kaelblein filed a motion to dismiss (Docket No. 70), and on December 3, 2024, Attorney Stephan filed a motion to dismiss (Docket No. 81).[8] I held a hearing on the two motions to dismiss on February 3, 2025. Docket No. 92. Following the hearing, I took the motions under advisement.

## II.    Defendants' Motions to Dismiss

### A.    *Michael and Nancy Kaelblein's Motion to Dismiss*

Michael and Nancy Kaelblein argue that Plaintiff's claims should be dismissed for two reasons. *See* Docket No. 71, at 1. First, they argue that the Court lacks subject matter jurisdiction over the "domestic relations aspects" of Plaintiff's claims and that the Court should decline to exercise jurisdiction over Plaintiff's remaining claims on the ground that they are closely and

---

[8] I had granted Attorney Stephan (and Amanda Kaelblein) additional time to respond to the Amended Complaint. *See* Docket No. 77. As of the date of this Report and Recommendation, Amanda has not responded to the Amended Complaint or otherwise appeared in the case.

inextricably related. *Id.* Second, they contend that Plaintiff has failed to state a claim upon which

relief may be granted, as his "threadbare and conclusory claims" are insufficient to make out a

claim under Supreme Court precedent. *Id.*

With respect to their first argument, Michael and Nancy Kaelblein claim that "[i]t is

axiomatic that domestic relations are excepted from federal court jurisdiction." *Id.* at 4 (citing

*Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)). They acknowledge that "the domestic

relations exception 'has been narrowly confined,'" but they point to language from a 40-year-old

First Circuit opinion indicating "that federal courts should abstain from adjudicating claims that

are closely related to, though not within, the jurisdictional exception." *Id.* (quoting *Sutter v. Pitts*,

639 F.2d 842, 843 (1st Cir. 1981)).[9] They argue that, because Plaintiff's claims for damages and

declaratory relief "hinge entirely on the state court's determination as to the proper custody and

support of the minor child," the claims fall squarely within the domestic relations exception. *Id.*

at 5. It is immaterial, they contend, that Plaintiff's claims were brought under 42 U.S.C. § 1983,

*see id.* at 6, citing the First Circuit's holding in *Sutter v. Pitts* that although the plaintiff "clothed

---

[9] Michael and Nancy Kaelblein reiterate this argument in their reply brief, claiming that "the
First Circuit . . . broadened the application of the domestic relations exception" in *Sutter v. Pitts*.
*See* Docket No. 80, at 2.

I note, however, that *Sutter* was decided before *Ankenbrandt v. Richards*, the case in which the
Supreme Court clarified the reach of the domestic relations exception. Accordingly, I am
skeptical that the First Circuit's pronouncement in *Sutter*, 639 F.2d at 843, that "federal courts
should abstain from adjudicating claims that are closely related to, though not within, the
jurisdictional exception" remains good law. *See Mooney v. Mooney*, 471 F.3d 246, 248 (1st Cir.
2006) ("In light of *Ankenbrandt* and *Marshall* [*v. Marshall*, 547 U.S. 293 (2006)], abstention is
not warranted *simply* because a claim that is 'not within' the domestic relation exception is,
nonetheless, 'closely related to' a domestic relations matter."); *Dunn v. Cometa*, No. 99-cv-
00117, 1999 WL 33117086, at *3 (D. Me. Nov. 1, 1999) (observing that "[t]he ongoing vitality
of [the] dictum [in *Sutter*] arguably is called into question by *Ankenbrandt*"), *report and
recommendation adopted* (D. Me. Dec. 20, 1999), ECF No. 15.

her complaint in the garb of a civil rights action," it "boil[ed] down to a demand for custody of the child," *Sutter*, 639 F.2d at 844.

For their second argument—that Plaintiff's claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)—Michael and Nancy Kaelblein point out that Plaintiff's allegations include no specific factual averments; Plaintiff simply alleges, in conclusory fashion, that they "actively participated in violating the Plaintiff's rights to equal protection[] and due process" by providing "false statements and supporting the issuance of an illegal child support order" and that they worked in "[c]oncert" with the other Defendants to deprive Plaintiff of his constitutional rights. *Id.* at 7 (quoting Docket No. 66-1, ¶ 3(B)). Michael and Nancy Kaelblein contend that it is unclear from these allegations *what* false statements they made or *how* they conspired to deprive Plaintiff of his constitutional rights. *See id.* at 8. They argue, therefore, that Plaintiff's allegations are "precisely the type of 'threadbare' allegations and 'naked assertions'" that the Supreme Court has held to be insufficient. *Id.* at 6.

## B.    *Attorney Stephan's Motion to Dismiss*

Attorney Stephan advances four arguments for dismissing Plaintiff's claims against him. *See* Docket No. 82, at 1–2.

First, Attorney Stephan contends that the Court lacks subject matter jurisdiction over Plaintiff's claims because they are barred by the *Rooker-Feldman* and/or *Younger* doctrines.[10] *Id.* at 4–6. Both doctrines, Attorney Stephan argues, preclude this Court from adjudicating

---

[10] Michael and Nancy Kaelblein's motion to dismiss does not argue that Plaintiff's claims should be dismissed under the *Rooker-Feldman* and/or *Younger* doctrines. Their counsel confirmed at oral argument, however, that they join in Attorney Stephan's argument that the Court lacks jurisdiction under *Rooker-Feldman* or *Younger*.

Plaintiff's claims, as doing so would require the Court to rule on the propriety of the Massachusetts Probate and Family Court's child support orders. *Id.*

Second, Attorney Stephan contends that the Court lacks subject matter jurisdiction over Plaintiff's claims against Attorney Stephan in his official capacity for two reasons: (a) such claims are barred by the Eleventh Amendment, and (b) a state official acting in his official capacity is not considered a "person" under § 1983. *Id.* at 6–7.

Third, Attorney Stephan contends that the claims brought against him in his individual capacity must be dismissed because he is entitled to absolute prosecutorial immunity. *Id.* at 7–8. Specifically, Attorney Stephan contends that "a state official who performs prosecutorial functions . . . is absolutely immune from damages actions," *id.* at 7 (quoting *Goldstein v. Galvin*, 719 F.3d 16, 26 (1st Cir. 2013)), and that he performed such functions when he "prosecut[ed] the child support complaint against [Plaintiff]," *id.*

Fourth, Attorney Stephan contends that Plaintiff fails to state a claim against him for any civil rights violations, as the Amended Complaint provides nothing more than "bald assertions and unsupportable conclusions." *Id.* at 9.

### III.    Legal Standards

Because Michael and Nancy Kaelblein and Attorney Stephan move to dismiss Plaintiff's claims for both lack of subject matter jurisdiction and failure to state a claim, I briefly review the relevant standards under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Before digging into the merits, I note that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, pro se litigants are not free to ignore the Federal Rules of Civil Procedure, including the pleading requirements set forth therein. *See FDIC v. Anchor Props.*, 13 F.3d 27, 31

(1st Cir. 1994) ("We have consistently held that a litigant's 'pro se status [does not] absolve him from compliance with the Federal Rules of Civil Procedure.'" (alteration in original) (quoting *United States v. Heller*, 957 F.2d 26, 31 (1st Cir. 1992))); *Falk v. Wells Fargo Bank, N.A.*, 600 F. Supp. 3d 115, 118 (D. Mass. 2022) ("[*P*]*ro se* plaintiffs are not insulated 'from complying with procedural and substantive law.'" (quoting *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997))).

### A.    Motion to Dismiss Under Rule 12(b)(1)

On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the party asserting federal jurisdiction bears the burden of demonstrating that a case falls within the court's jurisdiction. *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). Dismissal under Rule 12(b)(1) is appropriate when the facts alleged in a complaint, taken as true and reviewed in the light most favorable to the plaintiff, cannot support a finding of subject matter jurisdiction. *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009).

### B.    Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (explaining that district courts "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom").

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As

the Supreme Court has explained, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint that merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

## IV.    Analysis

As previewed above, the motions to dismiss presently before the Court raise several arguments for dismissal, some jurisdictional and others merits based. Courts are typically required to ensure that they have subject matter jurisdiction before reaching the merits of a case. *See Sinapi v. R.I. Bd. of Bar Examiners*, 910 F.3d 544, 549 (1st Cir. 2018) ("A district court generally has the obligation, when there is any question, to confirm that it has subject matter jurisdiction prior to considering the merits of the underlying controversy."). Accordingly, I will address the parties' jurisdictional arguments before reaching their arguments about the sufficiency of Plaintiff's factual allegations under Federal Rule of Civil Procedure 12(b)(6).

### A.    *The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claims or Should Abstain from Exercising its Jurisdiction.*

Michael and Nancy Kaelblein point to the domestic relations exception in arguing that the Court lacks subject matter jurisdiction over Plaintiff's claims. They also join in Attorney Stephan's argument that the Court lacks subject matter jurisdiction (or should abstain from exercising its jurisdiction) under the *Rooker-Feldman* or *Younger* doctrines.

As I will discuss, there are genuine uncertainties about the present status of the domestic relations exception. It is unnecessary to decide the point in this case, however, because Plaintiff's claims run directly afoul of a different limitation on the Court's authority, the *Rooker-Feldman* and/or *Younger* doctrines.

1.    *The Domestic Relations Exception*

The so-called "domestic relations exception," delineated by the Supreme Court in

*Ankenbrandt v. Richards*, "divests the federal courts of power to issue divorce, alimony, and

child custody decrees." 504 U.S. at 703. The limitation is one of subject matter jurisdiction, and

its aim is to "keep federal courts from meddling in a realm that is peculiarly delicate, that is

governed by state law and institutions (*e.g.*, family courts), and in which inter-court conflicts in

policy or decrees should be kept to an absolute minimum." *Dunn v. Cometa*, 238 F.3d 38, 41 (1st

Cir. 2001). The First Circuit has acknowledged the narrowing impact of the *Ankenbrandt*

decision:

> Despite the breadth of the phrase "domestic relations exception" and the potential
> reach of the exception's aim, *Ankenbrandt* made clear that the exception is narrowly
> limited. In general, lawsuits affecting domestic relations, however substantially, are
> not within the exception unless the claim at issue is one to obtain, alter or end a
> divorce, alimony or child custody decree.

*Id.*

Michael and Nancy Kaelblein argue that Plaintiff's claims "fall directly within the

domestic relations exception." Docket No. 71, at 4–5. At first blush, their argument has some

appeal. Although Plaintiff's claims were brought under § 1983, they undoubtedly concern

Plaintiff's child support obligations, a subject that has been said to fall within the domestic

relations exception even when "cloaked in the 'trappings' of another type of claim." *See Mandel

v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) (quoting *Congleton v. Holy Cross Child

Placement Agency, Inc.*, 919 F.2d 1077, 1078–79 (5th Cir. 1990)); *see also Fernos-Lopez v.

Figarella Lopez*, 929 F.2d 20, 22 (1st Cir. 1991) (noting that "federal courts have declined to

adjudicate actions for . . . child support," among "other 'domestic relations' matters"); *Sutter*,

639 F.2d at 844 ("Although [the plaintiff] has clothed her complaint in the garb of a civil rights

action, we agree with the district court that her claim boils down to a demand for custody of the

child."); *Cole v. North Carolina*, No. 15-cv-00310, 2015 WL 5023772, at *4 (D.R.I. Aug. 25, 2015) ("Although dressed in constitutional clothing, Plaintiff's claim is nothing more and nothing less than a domestic relations contest for custody of a child; it is established law that federal courts lack jurisdiction to entertain such controversies.").

But a closer look at First Circuit case law on the domestic relations exception leads to thorny questions as to whether Plaintiff's claims fit "directly" therein. These are threshold questions that, when considered in the context of this case, raise doubts about the applicability of the exception.

The most challenging issue here stems from Plaintiff's invocation of the Court's federal question jurisdiction, as many of the cases recognizing the domestic relations exception implicate only diversity jurisdiction. Here, Plaintiff explicitly alleges violations of his constitutional rights under 42 U.S.C. § 1983. The First Circuit has yet to decide "whether the domestic relations exception applies to claims invoking the Court's federal question jurisdiction." *Cole*, 2015 WL 5023772, at *4. As such, it is an open question in this Circuit whether the domestic relations exception operates only to preclude the exercise of diversity jurisdiction, or whether it may also limit federal question jurisdiction. *See Mandel*, 326 F.3d at 271 ("[T]he courts are divided as to whether the doctrine is limited to diversity claims and this court has never decided that issue.").

To be sure, some district judges within the First Circuit have concluded that the domestic relations exception suffices to bar claims based on federal question jurisdiction. *See, e.g.*, *Cole*, 2015 WL 5023772, at *4 (finding that the federal district court lacks jurisdiction over the plaintiff's claims under the domestic relations exception, even though the plaintiff's complaint "appear[ed] to straddle diversity and federal question jurisdiction"); *Scholwin v. Spence*, No. 07-

cv-11937-JLT, 2008 WL 11511609, at *6 (D. Mass. Apr. 23, 2008) ("Although this is a federal question case, this court takes the position that the rationale behind the domestic relations exception equally applies on these facts."). But the point is not well settled.

The fact that Plaintiff's Amended Complaint does not explicitly request injunctive relief further complicates application of the domestic relations exception. As explained above, the domestic relations exception applies only to claims that seek "to obtain, alter or end a divorce, alimony or child custody decree." *Dunn*, 238 F.3d at 41. When a lawsuit "in no way seeks such a decree," the exception does not apply. *Ankenbrandt*, 504 U.S. at 704; *see Rubin v. Smith*, 817 F. Supp. 987, 991 (D.N.H. 1993) (finding the domestic relations inapplicable where the plaintiffs "merely request[ed] damages" and there was "no evidence . . . to indicate that plaintiffs [were] seeking [any other] relief").

Presumably in recognition of this limitation, Plaintiff asserted at oral argument that he is not asking the Court to invalidate orders entered by the Massachusetts Probate and Family Court. Such protestations are not wholly convincing. As the First Circuit has indicated, the Court need not—and should not—simply take plaintiffs at their word. *See Irish v. Irish*, 842 F.3d 736, 742 (1st Cir. 2016) (explaining that, in considering whether the domestic relations exception applies, courts should look past plaintiffs' "self-serving characterization[s] of [their] action[s]" and should instead focus on "the reality of what is going on"); s*ee also Nwankwo v. Nwankwo*, No. 92-1624, 1992 WL 474105, at *2 (1st Cir. Dec. 9, 1992) (per curiam) (unpublished table decision) (finding, in an analogous case, that the plaintiff's claims fell within the domestic relations exception, even though the plaintiff had "attempted to cure the jurisdictional deficit by filing an amended complaint seeking only damages," reasoning that the "real aim" of the

plaintiff's lawsuit was plainly to "obtain direct enforcement of one of two conflicting state court custody decrees").

Here, Plaintiff's claims appear to be tantamount to requests for injunctive relief, even though Plaintiff does not expressly request that the Court invalidate the child support order issued by the Massachusetts Probate and Family Court. Granting the relief that Plaintiff requests would amount to essentially the same thing. For instance, in Count I of his Amended Complaint, Plaintiff asks the Court to find that Attorney Stephan violated Plaintiff's due process rights "by issuing a child support order *that was not authorized by the judge*." Docket No. 66-1, ¶ 3(A) (emphasis added). Count II similarly alleges that Defendants conspired to deprive him of his constitutional rights by, among other things, "supporting the issuance of an *illegal* child support order." *Id.* ¶ 3(B) (emphasis added). Despite Plaintiff's best efforts to dress this up as a damages action, the veneer wears thin; it is difficult to imagine how the Court could rule in Plaintiff's favor without finding that the Massachusetts Probate and Family Court's issuance of the challenged child support order was "not authorized" or "illegal."[11]

To sum all this up, Michael and Nancy Kaelblein's invocation of the domestic relations exception is tenable, but complicated. The Court could assume, as other courts within this Circuit

---

[11] Plaintiff's opposition to Michael and Nancy Kaelblein's motion to dismiss further belies his effort to re-cast this case as a damages action:

> The Plaintiff is not challenging any part of the child support order placed on January 17, 2023.
>
> *Though he is challenging the prior order placed on November 3, 2022 and vacated on November 18, 2022* that was placed without judicial approval and violated his due process and equal protection rights, which set off a chain reaction that eventually violated his parental rights in the process.

Docket No. 72-1, at 5 (emphasis added).

have done, that the domestic relations exception precludes attempts to invoke federal question jurisdiction over disputes that are squarely in the province of state domestic relations courts. *See, e.g.*, *Cole*, 2015 WL 5023772, at \*4; *Scholwin*, 2008 WL 11511609, at \*6. In the same vein, the Court might also conclude, as the First Circuit did in *Nwankwo v. Nwankwo*, that although Plaintiff does not expressly seek injunctive relief, his claims still fall within the domestic relations exception, as they would effectively require the Court to invalidate the Massachusetts Probate and Family Court's child support order. *See* 1992 WL 474105, at \*2 ("[W]here the suit's transparent purpose is to embroil the district court in a dispute involving conflicting custody decrees, the suit must be dismissed for lack of subject matter jurisdiction.").

There is no pressing need to decide whether the domestic relations exception bars Plaintiff's claims. As discussed below, there are simpler routes available, and the Court may be better advised to steer around this issue. Applying the domestic relations exception requires, at the outset, that the Court ascertain and characterize Plaintiff's true aim in bringing this lawsuit. Given the vagueness of Plaintiff's pleading, this is an interpretive exercise that would require the Court to pin down the meaning of a pro se litigant's allegations. Such an undertaking seems unnecessary.

### 2.    *The* Rooker-Feldman *and* Younger *Doctrines*

Given the vagaries of the domestic relations exception and its application in federal question cases, it makes sense to follow the First Circuit's approach in *Mandel v. Town of Orleans*, in which the court sidestepped the domestic relations exception and determined that the claims at issue "more clearly offend[ed] another broader constraint on federal court authority." 326 F.3d at 271. Such a course has been adopted by several other sessions of this Court. *See, e.g.*, *Masomi v. Madadi*, No. 18-cv-10058-FDS, 2018 WL 1122362, at \*1 n.1 (D. Mass. Mar. 1, 2018) (noting that the "matter may fall within [the] domestic relations exception" but dismissing under

16

the *Rooker-Feldman* doctrine instead because "[t]he courts are divided as to whether the doctrine is limited to diversity claims, and the First Circuit has not decided the issue"); *Monahan v. Sabatis*, No. 14-cv-13863-PBS, 2015 WL 13333511, at \*9 (D. Mass. Aug. 10, 2015) (explaining that the court need not decide whether the domestic relations exception compels dismissal of the plaintiff's claims "because [the] case is subject to dismissal on a variety of other grounds" and noting that "the courts are divided as to whether the doctrine is limited to diversity claims and the First Circuit has never decided the issue").

Like the domestic relations exception, both the *Rooker-Feldman* and *Younger* doctrines serve to keep the federal courts out of matters that are the exclusive purview of state courts. Which doctrine applies in a given case depends on whether we are talking about state proceedings that have concluded or about ongoing state court litigation. Here, the parties' submissions do not spell out the precise status of the Massachusetts Probate and Family Court action.[12] During oral argument, Plaintiff represented that there is an order in place from the Massachusetts Probate and Family Court setting terms of custody and visitation but that—at least as of the date of oral argument—the action was ongoing with respect to visitation. Plaintiff further represented that his child support obligations had been settled.

Irrespective of the exact status of the state court proceedings, it is evident that Plaintiff's claims are barred either by the *Rooker-Feldman* or the *Younger* doctrine. One way or another, Plaintiff is either impermissibly asking the Court to review a state child support order or to interfere with an ongoing state child support action. *See Pierre v. Cristello*, No. 17-cv-30105-KAR, 2017 WL 4768006, at \*2 (D. Mass. Oct. 3, 2017); *see also Gray-Bey v. 42 U.S. Code*

---

[12] Michael and Nancy Kaelblein assert in their reply brief that "[t]here is no dispute that the custody proceedings are, in fact, ongoing." Docket No. 80, at 3. The parties' submissions contain no such assertion about the child support proceedings.

*654(3) Mass. Dep't of Revenue Child Support Enf't Div.*, No. 20-cv-12042-DJC, 2021 WL

8323638, at *4 (D. Mass. Mar. 17, 2021) ("Child support matters and issues surrounding the

enforcement of child support[] . . . would be precluded under one or both of [the *Rooker-*

*Feldman* and *Younger*] doctrines."). "The Court, therefore, either has no jurisdiction or should

abstain from exercising its jurisdiction." *Pierre*, 2017 WL 4768006, at *2.

a.    The *Rooker-Feldman* Doctrine

"Under the *Rooker-Feldman* doctrine, 'lower federal courts do not have jurisdiction to

review a case litigated and decided in state court; only the United States Supreme Court has

jurisdiction to correct state court judgments.'" *Id.* (quoting *Littler v. Massachusetts*, No. 17-cv-

11277-RGS, 2017 WL 3495173, at *4 (D. Mass. Aug. 14, 2017)). As the First Circuit has held,

"[i]t is not necessary that the federal action formally seek to invalidate the state judgment; it is

enough if the federal action would *in substance* defeat or negate a state judgment, for example if

'the federal claim succeeds only to the extent that the state court wrongly decided the issues

before it.'" *Mandel*, 326 F.3d at 271 (emphasis added) (quoting *Hill v. Conway*, 193 F.3d 33, 39

(1st Cir. 1999)). In other words, "[t]he *Rooker-Feldman* doctrine is properly applied where,

regardless of how the claim is phrased, the only real injury to . . . [Plaintiff] . . . is ultimately still

caused by a state-court judgment." *Pierre*, 2017 WL 4768006, at *2 (second and subsequent

alterations in original) (quoting *DuLaurence v. Telegen*, 94 F. Supp. 3d 73, 80 (D. Mass. 2015),

*aff'd sub nom. DuLaurence v. Telegen et al.* (May 5, 2015)).

Based on Plaintiff's representations at oral argument, the injuries of which he complains

were caused by a child support order entered by Judge Phelan of the Massachusetts Probate and

Family Court. Adjudicating Plaintiff's claims would inevitably require the Court to determine

whether the court's issuance of that order was improper. *See* Docket No. 66-1, ¶ 3(A) (asking the

Court to find that Attorney Stephan violated Plaintiff's due process rights "by issuing a child

18

support order *that was not authorized by the judge*" (emphasis added)); *id.* ¶ 3(B) (asking the Court to find that Defendants conspired to deprive Plaintiff of his constitutional rights by, among other things, "supporting the issuance of an *illegal* child support order" (emphasis added)). Put another way, "Plaintiff is essentially seeking to have this Court impermissibly sit in review of the state court's judgment and order[]." *Pierre*, 2017 WL 4768006, at *2. In such circumstances, the Court lacks subject matter jurisdiction over the claims, and dismissal is appropriate. *See Scholwin*, 2008 WL 11511609, at *5 (finding that "*Rooker-Feldman* serves as a jurisdictional bar" where the plaintiff asserted that Massachusetts Department of Social Services officials "made errors of judgment in her case" and where the plaintiff "invite[d] th[e federal] court to review and reject those judgments").

> b.    The *Younger* Doctrine

To the extent that Plaintiff's claims relate to aspects of the Massachusetts Probate and Family Court action that are ongoing, the Court should decline to interfere under the abstention principles of *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine instructs federal courts, absent extraordinary circumstances, "not to 'interfere with ongoing state-court litigation.'" *Rossi v. Gemma*, 489 F.3d 26, 34 (1st Cir. 2007) (quoting *Maymó-Meléndez v. Alvarez-Ramírez*, 364 F.3d 27, 31 (1st Cir. 2004)). The First Circuit has explained that "[a]bstention is appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." *Id.* at 34–35.

Plaintiff's request for relief, to the extent that it pertains to ongoing proceedings before the Massachusetts Probate and Family Court, meets all three elements of the *Younger* test, and there is nothing about the circumstances of this case that would take it outside the *Younger*

doctrine. *See Cimini v. Massachusetts*, No. 11-cv-10211-GAO, 2011 WL 2119192, at *4 (D. Mass. May 25, 2011) (emphasizing that "child support and child custody are important matters of state interest"). As such, the Court should abstain from exercising jurisdiction over Plaintiff's claims.[13]

### B.    Attorney Stephan (in both his Official and Individual Capacities) Is Immune from Claims Seeking Damages Under Section 1983.

"42 U.S.C. § 1983 creates a private right of action through which plaintiffs may recover against state actors for constitutional violations." *Goldstein*, 719 F.3d at 24. "Section 1983 does not, however, have an unlimited remedial reach"; "[c]ourts must look to federal law in appraising the viability of immunity defenses in section 1983 actions." *Id.* "The immunity-seeker must carry the devoir of persuasion to show that an immunity applies." *Id.*

Attorney Stephan contends that Plaintiff's damages claims must be dismissed because he is entitled to immunity both under the Eleventh Amendment and under the doctrine that affords absolute immunity to state actors who perform prosecutorial functions. *See* Docket No. 82, at 6– 8. Both arguments appear dispositive.

---

[13] At oral argument, I asked Plaintiff what authority the Court has to adjudicate his claims and award damages. Plaintiff pointed to several of the cases he cites in his opposition (*see generally* Docket No. 89), including *Hafer v. Melo*, 502 U.S. 21 (1991); *Pierce v. Underwood*, 487 U.S. 552 (1988); *Thompson v. Thompson*, 484 U.S. 174 (1988); *B.S. v. Somerset Cnty.*, 704 F.3d 250 (3d Cir. 2013); *Martinez v. Cui*, 608 F.3d 54 (1st Cir. 2010); and *Middleton v. Middleton*, 314 S.E.2d 362 (Va. 1984). These cases, however, do not support Plaintiff's contention that federal courts are empowered to award damages arising from an allegedly improper state court order. To be sure, in *B.S. v. Somerset County*, the Third Circuit held that the *Rooker-Feldman* doctrine did not preclude federal subject matter jurisdiction over a child custody case. *See* 704 F.3d at 260. But in that case, the Third Circuit reasoned that "the injury [the mother] claim[ed was] . . . traceable to [the defendants'] actions, as opposed to the state court orders those actions alleged caused." *Id.* Here, by contrast, Plaintiff conceded at oral argument that the injury he complains of was caused by the Massachusetts Probate and Family Court order, even if that order was itself a result of Defendants' alleged misrepresentations.

>    1.    *Damages Claims Against Attorney Stephan in his* Official *Capacity Are Barred by the Eleventh Amendment.*

Plaintiff's damages claims against Attorney Stephan in his official capacity are barred by principles of Eleventh Amendment immunity. *See Larke v. Dep't of Revenue Child Support*, No. 10-cv-12148-JLT, 2011 WL 1877684, at *2 (D. Mass. May 17, 2011) (dismissing the plaintiff's claims against a Department of Revenue attorney to the extent that the plaintiff sought monetary damages). "The Eleventh Amendment generally bars actions for money damages in federal court against a State, its departments and its agencies, and its employees acting in their official capacities unless the State has consented to suit or Congress has overridden the State's immunity." *Gray-Bey*, 2021 WL 8323638, at *3. "Congress did not abrogate Massachusetts' sovereign immunity by enacting Section 1983." *Id.* (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). As such, Plaintiff's damages claims against Attorney Stephan in his official capacity are barred by the Eleventh Amendment.

Inasmuch as Plaintiff explicitly sues Attorney Stephan in his official capacity, Attorney Stephan does not qualify as a "person" as defined under 42 U.S.C. § 1983. *See* Docket No. 82, at 7. Section 1983 provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). "The Commonwealth and its agencies are not 'persons' under 1983, and may not be sued under the statute." *Scholwin*, 2008 WL 11511609, at *3. And, of course, the Commonwealth and its agencies can only act through their employees. "[A]lthough 'state officials literally are persons[,] . . . a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's

office. . . . As such, it is no different from a suit against the State itself.'" *Id.* (second and subsequent alterations in original) (quoting *Will*, 491 U.S. at 71). "Accordingly, the Eleventh Amendment prevents Section 1983 plaintiffs from suing state officials acting in their official capacities for monetary damages." *Id.*

> 2. *Damages Claims Against Attorney Stephan in his Individual Capacity Should Be Dismissed Because He Is Entitled to Absolute Prosecutorial Immunity.*

Absolute immunity is afforded to "a narrow swath of public officials, including 'judges performing judicial acts within their jurisdiction,' 'prosecutors performing acts intimately associated with the judicial phase of the criminal process,' and agency officials with functions similar to judges and/or prosecutors." *Goldstein*, 719 F.3d at 24 (quoting *Bettencourt v. Bd. of Regist. in Med. of Mass.*, 904 F.2d 772, 782 (1st Cir. 1990)). As the First Circuit has explained, "[t]he protection afforded by an absolute immunity endures even if the official 'acted maliciously and corruptly' in exercising his judicial or prosecutorial functions," *id.* (quoting *Wang v. N.H. Bd. of Regist. in Med.*, 55 F.3d 698, 702 (1st Cir. 1995)), and even "in the presence of 'grave procedural errors,'" *id.* (quoting *Nystedt v. Nigro*, 700 F.3d 25, 32 (1st Cir. 2012)).

"State officials and agency employees have been held to be absolutely immune for actions taken within a prosecutorial function in child welfare and support proceedings," so long as they are "performing functions that require prosecutorial discretion," not "merely administrative or investigative" tasks. *Wilson v. Brock*, No. 01-cv-00284, 2002 WL 1676287, at *5 (D.N.H. July 18, 2002). Thus, "[i]n determining whether an official qualifies for absolute immunity, an inquiring court must examine the particular functions that the official performs." *Goldstein*, 719 F.3d at 24.

Attorney Stephan points out in his submission that Plaintiff's claims "directly implicate the prosecutorial functions that Attorney Stephan performed in prosecuting the child support

complaint against [Plaintiff]." Docket No. 82, at 7. Specifically, Attorney Stephan argues that he "plainly performed prosecutorial functions when he initiated a complaint for child support on behalf of [Amanda] Kaelblein, when he appeared at a hearing before Judge Phelan, and when he filed a motion to vacate Judge Phelan's Temporary Order." *Id.* at 8.

The actions Plaintiff complains of—that is, Attorney Stephan's conduct with respect to the challenged child support order—are undisputably prosecutorial in nature. *See Pierre*, 2017 WL 4768006, at *3 (explaining that a government attorney's performance of "paternity and child support enforcement activities" were "prosecutorial in nature"); *see also Taylor v. Garcetti*, 55 F. App'x 853, 854 (9th Cir. 2003) ("The defendants' actions . . . in civilly enforcing [the plaintiff's] child support obligations were prosecutorial in nature"); *Washington v. Montgomery Cnty. Common Pleas Ct.*, No. 17-cv-00341, 2017 WL 5632881, at *2 (S.D. Ohio Oct. 30, 2017) (collecting cases to support the proposition that "child support enforcement attorneys . . . are entitled to prosecutorial immunity"), *report and recommendation adopted*, 2017 WL 5660023 (S.D. Ohio Nov. 21, 2017). The Amended Complaint is devoid of any allegations that would suggest that Plaintiff is suing Attorney Stephan for any acts outside the scope of Attorney Stephan's prosecutorial responsibilities.

On this ground, Plaintiff's damages claims against Attorney Stephan in his individual capacity should be dismissed.

### C.     *Plaintiff's Amended Complaint Should Be Dismissed for Failure to State a Claim.*

Even if it were proper for the Court to exercise jurisdiction over Plaintiff's claims (or if Attorney Stephan were not immune from damages claims brought under § 1983), I would still recommend that this action be dismissed because Plaintiff's Amended Complaint fails to state a plausible claim against Defendants.

Private parties are not subject to suit under § 1983, and a conclusory allegation that private actors "conspired" with a state actor will not suffice to circumvent that principle. Section 1983 "does not authorize claims against private parties like [a] child's mother and maternal grandparents unless they have conspired with or are otherwise willful participants in joint activity with the state or its agents." *Cole*, 2015 WL 5023772, at *7. "In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy." *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977). "It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts." *Id.*; *see also Cole*, 2015 WL 5023772, at *7 (explaining that, "to state a claim for civil conspiracy under section 1983, a plaintiff must make something more than a naked assertion of conspiracy between a state actor and private parties" (quoting *Flood v. Me. Dep't of Corr.*, No. 11-cv-00270, 2012 WL 5389533, at *15 (D. Me. Aug. 24, 2012), *aff'd* No. 11-cv-00270, 2012 WL 5389529 (D. Me. Nov. 2, 2012)).

The Amended Complaint can only be described as consisting of "conclusory allegations of conspiracy" unsupported by "references to material facts." *Slotnick*, 560 F.2d at 33. Plaintiff alleges generally that Michael, Nancy, and Amanda Kaelblein "worked together to keep the Plaintiff from V.S."; that Michael and Nancy Kaelblein "supported" their daughter Amanda in making inconsistent statements in court; and that Amanda Kaelblein and Eric Stephan "conspired to get a child support order in Massachusetts that was not legally authorized." Docket No. 66-1, ¶¶ 2(G)–(H). But there are no specific factual averments spelling out what it is that Plaintiff claims Michael and Nancy Kaelblein actually did to "support" their daughter's allegedly

inconsistent statements or how Attorney Stephan conspired with the other Defendants to implement an "illegal" child support order.

All plaintiffs, including pro se plaintiffs, must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Wright v. Town of Southbridge*, No. 07-cv-40305-FDS, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (unpublished table decision) (quoting *Adams v. Stephenson*, No. 96-2266, 1997 WL 351633, at *1 (1st Cir. June 23, 1997)). Because Plaintiff has failed to do so in this case, his claims are subject to dismissal under Rule 12(b)(6). *See Cole*, 2015 WL 5023772, at *7 (dismissing the plaintiff's section 1983 claim where the complaint "include[d] nothing to explicate the relationship or nature of the cooperation constituting the alleged conspiracy").[14]

## V.    Plaintiff's Additional Pending Motions

Several additional motions filed by Plaintiff remain pending. *See* Docket No. 84 (Plaintiff's motion for default judgment as to Amanda Kaelblein); Docket No. 97 (Plaintiff's motion for default judgment as to Amanda Kaelblein, as well as for a hearing on damages); Docket No. 100 (Plaintiff's request for a status conference). Given that this Court lacks subject matter jurisdiction over this case, these motions should be denied as moot. *See Afrasiabi v. Gov't of Islamic Republic of Iran*, No. 24-cv-10451-MJJ, 2025 WL 880206, at *6 (D. Mass. Mar. 11, 2025) ("Courts have held that they have an 'affirmative duty' to confirm they have 'jurisdiction

---

[14] Plaintiff argues that his Amended Complaint should not be dismissed under Rule 12(b)(6) because the Court can look to his original complaint for the "necessary context and detail." *See* Docket No. 72-1, at 7–8. But the case Plaintiff cites as support for this proposition, *ConnectU LLC v. Zuckerberg*, 522 F.3d 82 (1st Cir. 2008), says precisely the opposite: "An amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the earlier complaint is a dead letter and 'no longer performs any function in the case.'" *Id.* at 91 (citations omitted) (quoting *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003)).

over both the subject matter and the parties' before a default judgment is entered." (quoting *Gambino v. Radiant Elec., LLC*, No. 17-cv-10034-ADB, 2017 WL 6544823, at *2 (D. Mass. Dec. 21, 2017))).

## VI.    Conclusion

For the reasons explained above, I **RECOMMEND** that the Court **GRANT** Michael and Nancy Kaelblein's Motion to Dismiss (Docket No. 70) and Attorney Stephan's Motion to Dismiss (Docket No. 81) and that the Court **DISMISS** Plaintiff's Amended Complaint without prejudice. I further **RECOMMEND** that the Court **DENY AS MOOT** Plaintiff's Motion for Default Judgment as to Amanda Kaelblein (Docket No. 84), Plaintiff's Motion for Default Judgment, Motion to Compel, and Request for Hearing on Damages (Docket No. 97), and Plaintiff's Motion for Status Conference (Docket No. 100).


                                        /s/ Paul G. Levenson
                                        Paul G. Levenson
Dated: May 16, 2025                     U.S. MAGISTRATE JUDGE

## NOTICE OF RIGHT TO OBJECT

The parties are advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).