# UNITED STATES DISTRICT COURT IN BOSTON

Michael Sean Speight

V.                                                    124cv12363

Amanda Kaelblein and ect.

## PLAINTIFF'S MOTION FOR RECONSIDERATION

NOW COMES the Plaintiff, respectfully requesting this Honorable Court
to reconsider its ruling dismissing the Plaintiff's complaint. The Plaintiff
asserts that the Court's order is based on factual and legal eFor the
Court to imply that the Plaintiff is seeking to alter or modify a child support
order is both factually incorrect and legally outrageous. The Plaintiff is
not attempting to relitigate domestic support matters, but rather to hold
state actors accountable for violating his constitutional rights through the
unlawful issuance and enforcement of a **vacated** order. The existence of
that order—and the damage it caused before being vacated—is the
**basis for the civil rights claim**, not its modification. This case is not
about recalculating child support; it is about **state misconduct**, abuse of
authority, and the deprivation of federally protected rights.



Mischaracterizing the Plaintiff's claim as an attempt to alter support obligations deliberately misconstrues the nature of the action and ignores the well-established principle that **federal courts have jurisdiction to redress constitutional injuries caused by state officials**, regardless of whether they occurred in the context of a family law dispute.errors that, if left uncorrected, would result in a manifest injustice and embolden unconstitutional conduct by state actors against both parents and children

.This situation also illustrates a broader, deeply troubling pattern in our legal system: the **systemic reluctance to hold mothers accountable for their actions**, particularly when those actions result in constitutional violations. This reflects a **clear gender bias against fathers**, which continues to erode trust in the courts and the principle of equal protection under the law. As the First Circuit noted in *Brack v. Perez*, 64 F.4th 56, 63 (1st Cir. 2023), courts cannot apply standards that result in disparate treatment based on gender in matters involving parental rights. Similarly, in *Stanley v. Illinois*, 405 U.S. 645 (1972), the U.S. Supreme Court struck down a law that presumed mothers were more fit parents, holding that **unsubstantiated assumptions based on gender violate the Equal Protection Clause**. In Massachusetts, *Custody of Kali*, 439 Mass. 834 (2003), the court acknowledged that custody decisions must be gender-neutral and based solely on the child's best interests—not on outdated stereotypes. Despite this, the federal court here has allowed a mother to escape consequences after procedural defaults, factual misrepresentations, and constitutional violations, while dismissing the father's well-pleaded claims and documented damages. This selective



enforcement reveals a **bias that runs contrary to both constitutional principles and binding precedent**.

Subject In this case, **there is no ongoing state court proceeding**—the order that allegedly caused the injury was **vacated**. That means the underlying action has concluded and the injury stems not from an active case, but from the **misconduct that led to an unconstitutional order** in the first place. The harm has already occurred, and the federal claim is based on **completed misconduct by a state actor**, not on any pending or active state adjudication.

As such, *Younger* abstention does not apply. Federal courts retain jurisdiction under **42 U.S.C. § 1983** to review and remedy past constitutional violations, even if they occurred in the context of a state court proceeding that has since ended. Courts including the First Circuit have emphasized that federal courts **should not abstain** when there is no state action to defer to, or where the plaintiff alleges fraud or due process violations rather than merely seeking to overturn a state judgment. (See *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 36 (1st Cir. 2004); *RFor the Court to state that the plaintiff failed to make a plausible allegation or that the claim lacked merit is a fundamental mischaracterization of the facts presented. The plaintiff submitted court transcripts from the November 3rd hearing showing that two of the main defendants— state actor and private individual ( Amanda Kaelblein who orchestrated this whole thing)—lied directly to the judge, thereby misrepresenting material facts. If such documented misconduct is not*

 CamScanner

*considered sufficient evidence of a conspiracy or constitutional violation, then under that standard, no criminal defendant could ever be convicted. The plaintiff has clearly alleged and substantiated constitutional violations involving Massachusetts state actors and private individuals. These defendants, all based in Massachusetts, are being defended by the Massachusetts Attorney General's Office in a Massachusetts federal court—despite one or more of them being private individuals. This raises serious questions about impartiality, misuse of public resources, and whether the system is protecting its own rather than enforcing the rule of law. It begins to smell not just of injustice—but of systemic bias and corruption.io Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 73 (1st Cir. 2005)).

**Subject Matter Jurisdiction**

The Court's dismissal appears to rest on the assumption that it lacks subject matter jurisdiction over the Plaintiff's claims. However, this case arises under the Constitution and laws of the United States, specifically the Fourteenth Amendment, and thus falls squarely within the Court's federal question jurisdiction under 28 U.S.C. § 1331. The Plaintiff alleges violations of due process and equal protection rights by state actors, which are actionable under 42 U.S.C. § 1983.

In Harper v. Rettig, 993 F.3d 3 (1st Cir. 2021), the First Circuit emphasized that federal courts have a duty to exercise jurisdiction when properly invoked, particularly in cases alleging constitutional violations.

CamScanner

considered sufficient evidence of a conspiracy or constitutional violation, then under that standard, no criminal defendant could ever be convicted. The plaintiff has clearly alleged and substantiated constitutional violations involving Massachusetts state actors and private individuals. These defendants, all based in Massachusetts, are being defended by the Massachusetts Attorney General's Office in a Massachusetts federal court—despite one or more of them being private individuals. This raises serious questions about impartiality, misuse of public resources, and whether the system is protecting its own rather than enforcing the rule of law. It begins to smell not just of injustice—but of systemic bias and corruption.io Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 73 (1st Cir. 2005)).

## Subject Matter Jurisdiction

The Court's dismissal appears to rest on the assumption that it lacks subject matter jurisdiction over the Plaintiff's claims. However, this case arises under the Constitution and laws of the United States, specifically the Fourteenth Amendment, and thus falls squarely within the Court's federal question jurisdiction under 28 U.S.C. § 1331. The Plaintiff alleges violations of due process and equal protection rights by state actors, which are actionable under 42 U.S.C. § 1983.

In Harper v. Rettig, 993 F.3d 3 (1st Cir. 2021), the First Circuit emphasized that federal courts have a duty to exercise jurisdiction when properly invoked, particularly in cases alleging constitutional violations.

 CamScanner

Similarly, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that federal courts have jurisdiction to enjoin state officials from enforcing unconstitutional acts.

State Actors Misrepresenting FactsPlaintiff respectfully objects to any assertion that this Court lacks subject matter jurisdiction. The nature of Plaintiff's claims arises under federal law and/or meets the requirements for diversity jurisdiction, thus falling squarely within this Court's jurisdiction under **28 U.S.C. § 1331** and/or **28 U.S.C. § 1332**.

## II. Federal Question Jurisdiction – 28 U.S.C. § 1331

This Court has original jurisdiction over all civil actions **arising under the Constitution, laws, or treaties of the United States**.

Plaintiff brings claims pursuant to federal statutes, including but not limited to:

- **42 U.S.C. § 1983** – for deprivation of rights under color of state law (e.g., denial of due process, parental rights, equal protection),

- **14th Amendment Due Process Clause** – particularly as it relates to **fundamental parental rights** (See *Troxel v. Granville*, 530 U.S. 57 (2000)),

- **42 U.S.C. § 1985 or § 1986** – if conspiracy or failure to prevent civil rights violations is alleged,

- **Color of Law actions** against DOR employees, judges, or other state actors misusing their authority.

Federal courts are the appropriate venue for such claims even if the underlying conduct occurred within a particular state, such as Massachusetts.

> "A suit arises under the Constitution and laws of the United States if the plaintiff's right to relief depends upon the construction or application of federal law." — *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005).

---

## III. Diversity Jurisdiction – 28 U.S.C. § 1332

Alternatively, should the Court find federal question jurisdiction lacking, it may exercise **diversity jurisdiction** if:

1. The parties are **citizens of different states**, and

2. The amount in controversy **exceeds $75,000**.

Even if some defendants are in Massachusetts, if at least one proper defendant is from a different state and the federal claims implicate damages exceeding $75,000 (including compensatory, punitive, and injunctive relief), diversity jurisdiction is satisfied.



## IV. Supplemental Jurisdiction — 28 U.S.C. § 1367

Even if some of Plaintiff's claims are rooted in state law (e.g., torts, interference with custody), they are **closely related to federal claims and arise out of the same nucleus of operative fact.** Thus, the court may exercise **supplemental jurisdiction.**

"So long as the federal and state claims derive from a common nucleus of operative fact... the federal court can hear the whole case." — *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

## V. Venue Is a Separate Issue from Jurisdiction

The fact that the events occurred in Massachusetts is **relevant to venue, not jurisdiction.** The **District of Massachusetts** is the proper venue under **28 U.S.C. § 1391(b)** if:

- A substantial part of the events or omissions occurred in Massachusetts,

- Or if any defendant resides there.

However, **subject matter jurisdiction exists regardless of venue.** If the issue is venue, the proper remedy is **transfer, not dismissal. See 28 U.S.C. § 1406(a).**

 CamScanner

The Plaintiff alleges that state actor, sDefendant Stephen, knowingly misrepresented material facts in state court proceedings to obtain an order that violated the Plaintiff's constitutional rights. Such conduct removes the protection of prosecutorial immunity, as established in Kalina v. Fletcher, 522 U.S. 118 (1997), where the Supreme Court held that prosecutors are not immune for actions taken outside their role as advocates, such as making false statements in affidavits.

Furthermore, in Shea v. Cameron, 92 Mass. App. Ct. 731 (2018), the Massachusetts Appeals Court recognized that misrepresentations in legal proceedings can give rise to actionable claims, particularly when they result in harm to the opposing party.

Stephen is **not entitled to Eleventh Amendment immunity, prosecutorial immunity, or any form of qualified immunity** due to his actions in this case. When a government attorney steps outside their proper legal role and **acts as an advocate to mislead the court or misrepresent material facts**, immunity doctrines do not apply. Prosecutorial immunity only protects actions that are **intimately associated with the judicial phase of the criminal process**, but Stephen acted outside of that scope by **misrepresenting facts in a civil child support proceeding** and intentionally misleading the judge in violation of clearly established constitutional rights. The plaintiff has a **documented email from Attorney Mike Ryan to Stefan dated prior to the November 3rd hearing, in August,** clearly informing Stephen that



there was an **ongoing custody and child support matter in New Hampshire**. Despite this, Stephen proceeded to draft and submit a Massachusetts child support order, which the judge never intended to sign or enforce, thus **stepping outside the bounds of lawful prosecution** and engaging in **deliberate misconduct**.

Under *Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004), the First Circuit held that immunity does not apply to **officials who fabricate evidence, suppress exculpatory material, or act in ways that violate constitutional rights**. Similarly, in *Mireles v. Waco*, 502 U.S. 9 (1991), the Supreme Court recognized that **judicial or prosecutorial immunity does not apply when the official acts "clearly outside the scope of his jurisdiction"**. Stephen's conduct—knowingly submitting a fraudulent order to mislead the court and circumvent a pending out-of-state proceeding—falls squarely within this exception. As such, Stephen's actions are not shielded by any form of immunity and are actionable under **42 U.S.C. § 1983** for violations of **due process and equal protection under the Fourteenth Amendment**.

**McCormick v. Braverman**, 451 F.3d 382 (6th Cir. 2006): The Sixth Circuit held that the Rooker-Feldman doctrine does not bar federal jurisdiction when a plaintiff alleges that a state court judgment was procured through fraud or misrepresentation. The court emphasized that if the source of the injury is a third party's actions, rather than the state court judgment itself, then the plaintiff asserts an __independent claim.__



**Kougasian v. TMSL, Inc.**, 359 F.3d 1136 (9th Cir. 2004): The Ninth Circuit recognized an exception to the Rooker-Feldman doctrine for cases involving extrinsic fraud. The court stated that if a plaintiff alleges that a state court judgment was obtained through extrinsic fraud by an adverse party, and not due to legal error by the state court, then federal jurisdiction is not barred.

**Benavidez v. County of San Diego**, 993 F.3d 1134 (9th Cir. 2021): In this case, social workers allegedly misrepresented facts to obtain a state court order authorizing medical examinations of children without parental consent. The Ninth Circuit held that the Rooker-Feldman doctrine did not apply because the plaintiffs were challenging the conduct of the social workers, not the state court judgment itself.

**Exxon Mobil Corp. v. Saudi Basic Industries Corp.**, 544 U.S. 280 (2005): The Supreme Court clarified that the Rooker-Feldman doctrine applies only when a federal plaintiff seeks to overturn a state court judgment. It does not bar federal jurisdiction over independent claims, even if those claims involve the same subject matter as the state court proceedings.

The **Younger abstention doctrine** is a legal principle from *Younger v. Harris*, 401 U.S. 37 (1971), which holds that **federal courts must generally abstain from interfering in ongoing state court proceedings** when certain conditions are met. However, **there are clear exceptions** where **Younger does not apply**, particularly in **civil rights**



cases under 42 U.S.C. § 1983 involving **bad faith, harassment,** or **flagrant constitutional violations** by state actors.

---

## 1. No Ongoing State Proceeding

- **Younger only applies when there is an active, ongoing judicial proceeding in state court.**

- If the **state action is over, dismissed, or the order was vacated,** then **Younger does not apply.**

  ✅ *See: Sprint Communications, Inc. v. Jacobs,* 571 U.S. 69 (2013) – "Younger applies only in three types of proceedings: criminal prosecutions, civil enforcement proceedings akin to criminal prosecutions, and civil proceedings involving orders uniquely in furtherance of the state courts' ability to perform their judicial functions."

---

## 2. Bad Faith or Fraud by State Actors

- If the **state actors and others engaged** in **misrepresentation, fabrication, or fraud in court,** that **removes the protection of Younger.**

  ✅ *See: Gibson v. Berryhill,* 411 U.S. 564 (1973) – Younger does

not apply where there is **bias or bad faith** on the part of state actors.

☑️ *Esso Standard Oil Co. v. López-Freytes*, 522 F.3d 136 (1st Cir. 2008) – If there's **bad faith or harassment, Younger abstention is not appropriate**.

---

### 3. No Opportunity to Raise Federal Claims in State Court

- If the **plaintiff was denied an opportunity to raise constitutional issues** (like due process and equal protection) or if the state court was misled by actors who **intentionally concealed facts**, **Younger does not apply**.

  ☑️ *Trainor v. Hernandez*, 431 U.S. 434 (1977) – Abstention is not required when the state proceeding **does not provide an adequate opportunity to raise constitutional challenges.**

---

### 4. Civil Rights Violations & § 1983 Claims

- Federal courts are **required** to enforce constitutional rights under § 1983, **even if the violation stems from a state court process**, **when state actors exceed their authority or act unlawfully**.

  ☑️ *Mitchum v. Foster*, 407 U.S. 225 (1972) – The **very purpose** of § 1983 is to allow federal courts to protect federal rights **from**

not apply where there is **bias or bad faith** on the part of state actors.

☑️ *Esso Standard Oil Co. v. López-Freytes*, 522 F.3d 136 (1st Cir. 2008) – If there's **bad faith or harassment**, **Younger abstention is not appropriate**.

---

### 3. No Opportunity to Raise Federal Claims in State Court

- If the **plaintiff was denied an opportunity to raise constitutional issues** (like due process and equal protection) or if the state court was misled by actors who **intentionally concealed facts**, **Younger does not apply**.

  ☑️ *Trainor v. Hernandez*, 431 U.S. 434 (1977) – Abstention is not required when the state proceeding **does not provide an adequate opportunity to raise constitutional challenges**.

---

### 4. Civil Rights Violations & § 1983 Claims

- Federal courts are **required** to enforce constitutional rights under § 1983, **even if the violation stems from a state court process**, **when state actors exceed their authority or act unlawfully**.

  ☑️ *Mitchum v. Foster*, 407 U.S. 225 (1972) – The **very purpose** of § 1983 is to allow federal courts to protect federal rights **from**

**misuse by state officials.**

---

**5. No "Domestic Relations Exception" When Constitutional Rights Are at Stake**

- If the case involves **a vacated order**, and you're **not seeking modification of child support or custody**, the **"domestic relations exception" and Younger do not apply**.

  ☑ *Elgin v. Department of Treasury*, 567 U.S. 1 (2012) – Constitutional claims must be heard, even if a case arises from a family context.

---

**Summary**

| Reason Younger Doesn't Apply | Supporting Case Law |
|---|---|
| No ongoing state proceeding | *Sprint v. Jacobs* (2013) |
| Fraud/Misconduct by State Actor | *Gibson v. Berryhill* (1973), *Esso v. López-Freytes* (2008) |


CamScanner

| | |
|---|---|
| No fair opportunity to raise federal claims | *Trainor v. Hernandez* (1977) |
| Civil rights violations | *Mitchum v. Foster* (1972) |
| Not a domestic relations case | *Elgin v. Treasury* (2012) |

Furthermore, doctrines such as *Rooker v. Feldman* and *Younger v. Harris*, 401 U.S. 37 (1971), are **inapplicable** in this case. These doctrines are designed to prevent federal interference in ongoing, legitimate state proceedings—not to shield **state actors who engage in misconduct**. Here, the Plaintiff is not asking the federal court to interfere with a pending state action but to review the **completed acts** of a state actor who entered court, **misrepresented material facts**, and **drafted an order that directly violated the Plaintiff's constitutional rights**, which the judge then signed based on false pretenses. When a state actor abuses their authority to manipulate the judicial process and obtain orders that are later **vacated**, the harm has already occurred, and federal courts have clear jurisdiction under **42 U.S.C. § 1983** to address those constitutional injuries. The federal courts are not barred from acting merely because the misconduct took place within a state forum—especially when that forum was used **as an instrument of the violation itself**. Neither *Rooker* nor *Younger* stands for the proposition


CamScanner

that federal courts must remain silent in the face of **fraudulent, unlawful, or unconstitutional conduct** by state officials. The **First Circuit** has recognized that abstention is not required where the plaintiff seeks to remedy past constitutional violations rather than interfere with ongoing proceedings. (*Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 36 (1st Cir. 2004); see also *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 73 (1st Cir. 2005)). Additionally, the **Supreme Court** in *Mitchum v. Foster*, 407 U.S. 225 (1972), held that § 1983 is an express statutory exception to the anti-injunction rule, affirming that federal courts **may intervene when state procedures are used to violate federal rights**.

### Amanda Kaelblein

The Plaintiff respectfully asserts that the mother has not been held accountable for her actions, which include conspiring with a state actor, Stephen, to intentionally mislead the court and violate the Plaintiff's constitutional rights. Despite being served and never answering the original or amended complaint, the mother was not entered into default judgment, even after multiple motions and documented evidence of service were filed. This shows a clear bias and double standard. The judge dismissed the claims without prejudice, indicating the court knew wrongdoing had occurred but refused to take appropriate action. If the roles were reversed and the father had failed to respond in federal court, default judgment would have likely been entered without hesitation. This inaction reflects a systemic failure to hold mothers accountable and underscores a pattern of gender bias within the judicial system—an issue well documented in family law and civil rights litigation. Courts



cannot afford to be perceived as protectors of certain individuals based on gender, especially when children's and parental constitutional rights are at stake.

Amanda Kaelblein not only initiated this matter in bad faith to obtain an extended child support order in Massachusetts, but she also **knowingly misrepresented material facts** in multiple courts, in direct contradiction to the November 3rd, 2022 Massachusetts court transcript. Both Kaelblein and Eric Stephen were fully aware of the **ongoing custody action in New Hampshire**, yet they pursued an unlawful child support order in Massachusetts, violating the **Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA, M.G.L. c. 209B),** and **Massachusetts law.** Kaelblein failed to answer the federal complaint, effectively waiving her right to dispute the **well-pleaded allegations.** The assertion that the plaintiff failed to state a claim is not just erroneous—it is **legally and factually baseless.** The complaint clearly alleged **constitutional violations,** including the deprivation of parental rights under **the Fourteenth Amendment,** and intentional misrepresentation by state actors and private individuals, which constitutes fraud upon the court and is **not protected by absolute or qualified immunity.** See *Malley v. Briggs,* 475 U.S. 335, 341 (1986) ("Qualified immunity does not shield officials who violate clearly established statutory or constitutional rights").

Under Federal Rule of Civil Procedure 55(a), when a defendant fails to plead or otherwise defend a lawsuit, and that failure is demonstrated by affidavit or otherwise, the clerk must enter the party's default. This rule applies equally in cases brought under 42 U.S.C. § 1983.

In the context of § 1983 litigation, courts have addressed situations where some defendants fail to respond while others actively defend. .

However, in cases where a defendant fails to respond and no other defendants are contesting the claims, courts have entered default judgments. For example, in *Howard v. Federal Home Loan Mortgage Corporation*, the court granted a default judgment against a defendant who failed to plead or otherwise defend, emphasizing that the well-pleaded allegations of the complaint relating to liability are taken as true upon default.

It's important to note that while default judgments are generally disfavored, they are appropriate when a defendant fails to respond, and the plaintiff's claims are sufficiently pleaded. Courts consider factors such as the possibility of prejudice to the plaintiff, the merits of the plaintiff's substantive claim, and the sufficiency of the complaint when deciding whether to enter a default judgment.In Section 1983 litigation, when multiple defendants are named and one fails to respond, courts generally have discretion to enter default judgment against the non-responding party. However, this discretion is exercised cautiously, especially when the defendants are alleged to be jointly liable.

The seminal case of *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872), established that in cases involving multiple defendants alleged to be



jointly liable, entering a default judgment against one defendant while others continue to litigate can lead to inconsistent judgments. Therefore, courts often delay default judgments against non-responding defendants until the case against the responding defendants is resolved.

Nonetheless, if the claims against the responding defendants are valid and the non-responding defendant has been properly served and failed to answer, courts may enter default judgment against the non-responding party. For instance, in *Carrasco v. Craft*, 164 Cal. App. 3d 796 (1985), the court affirmed a default judgment against a defendant who failed to answer an amended complaint that introduced new allegations.

Therefore, in a Section 1983 case, if a defendant fails to respond while others are actively defending, the court may delay entering default judgment against the non-responding defendant to avoid inconsistent outcomes. However, if the claims against the responding defendants are successful, the court may proceed with default judgment against the non-responding party.

**Michael and Nancy Kaelblein**

When a judge ignores serious misconduct such as **champerty and barratry**—particularly in cases involving **constitutional violations**—it sets a **dangerous precedent** that invites third parties to fund and influence unlawful litigation for personal or ideological gain. Champerty,


CamScanner

defined as the unlawful maintenance of a suit by a party with no interest in the outcome, and barratry, the repeated incitement of groundless judicial proceedings, are doctrines rooted in public policy to **protect the integrity of the judicial process**. As the Massachusetts Supreme Judicial Court held in *In re Board of Bar Overseers of the Supreme Judicial Court*, 447 Mass. 1004 (2006), engaging in such conduct violates the ethical duty to avoid frivolous or harassing litigation. Furthermore, in *Osprey, Inc. v. Cabana Ltd. P'ship*, 532 S.E.2d 269 (S.C. 2000), the court reaffirmed that champertous agreements are void as against public policy because they encourage litigation not to vindicate rights, but to **exploit the judicial system**. If courts allow third parties, such as grandparents or others, to **financially support and drive litigation that results in violations of civil rights**, it erodes constitutional protections and sends a message that rights can be undermined through **strategic manipulation and proxy litigation**. This is not only contrary to the intent of 42 U.S.C. § 1983, which holds state actors and conspirators accountable for rights violations, but also endangers the fairness and legitimacy of the judicial system itself.

This Court has a **constitutional obligation to protect civil rights under 42 U.S.C. § 1983,** and cannot avoid this duty merely because the events stemmed from a domestic relations matter. **Federal courts may not decline jurisdiction where constitutional claims are raised and supported by facts independent of state court custody decisions.** See *Diaz v. Dube*, 320 F. App'x 48, 50 (1st Cir. 2009). The order in question was **vacated**—a legal act which nullifies its effect entirely. As a



result, there is no valid judgment left to "overturn," meaning **abstention doctrines like Younger and Rooker-Feldman do not apply**. See *Katz v. McVeigh*, 931 F.3d 112, 117 (1st Cir. 2019) (Rooker-Feldman applies only where the plaintiff is inviting federal review of a final state court judgment). The actions by state officials caused irreparable harm before the order was vacated—harms that are **not mooted by the later vacatur**, including **economic loss, loss of parenting time, and severe emotional distress**. These are precisely the types of harms that § 1983 was enacted to redress. See also *Patsy v. Board of Regents*, 457 U.S. 496, 503 (1982).

To suggest that federal courts have no role in such cases is to ignore the purpose of the **Civil Rights Act of 1871** and to abdicate the Court's role as guardian of federal rights. The First Circuit has held that **intentional misrepresentations by state actors which lead to deprivations of liberty or property can be actionable under federal law**. See *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004) (knowingly presenting false information to a court violates due process). Furthermore, **Massachusetts law holds that fraud on the court is a basis to vacate judgments** and is **not shielded by procedural doctrine**. See *Comm'r of Revenue v. Carrigan*, 45 Mass. App. Ct. 309, 313 (1998). The notion that such acts do not state a claim when both federal and state law say otherwise is legally untenable.

The Court's refusal to engage with these facts suggests a deeper reluctance to confront the **systemic abuse of family law proceedings** being reported across this country. Constitutional rights do not evaporate in domestic relations contexts. When state actors misrepresent facts,



fabricate claims, or misuse their authority to punish parents, **federal courts have a duty to intervene—not abstain**. If this Court refuses to uphold the plaintiff's constitutional rights, it also turns its back on the rights of the most vulnerable: the **minor child**, whose bond with their parent has been **unlawfully severed**. Inaction under the guise of abstention is not neutrality—it is **judicial abdication**, and history will judge it accordingly.

Conclusion

This case does not resemble a domestic relations matter; rather, it involves serious allegations of constitutional violations by state actors. The Plaintiff respectfully requests that the Court reconsider its dismissal of the complaint. Should the Court deny this motion, the Plaintiff intends to appeal the decision and will file a new complaint on behalf of the minor child, V.S., ensuring that it clearly presents federal constitutional claims beyond the scope of domestic relations. V.S. has not had a state court judgement against her,it's a strictly constitutional violation . V.S. complaint there will be absolutely nothing for this Court to hide behind.

Our Founding Fathers foresaw the risk of government overreach and the abuse of power by those in authority. That is precisely why they enshrined the Constitution—to serve as the supreme law of the land,



binding even the most powerful and ensuring that **every American's rights would be protected** in the face of injustice. To see modern courts disregard clear constitutional violations, especially by state actors conspiring with private individuals, is not only a legal failure—it is a **betrayal of the very principles this nation was built upon**. It goes against everything our Founders fought for in blood, sacrifice, and vision. As a symbolic reminder of their intent, **George Washington is said to have placed a second document in the cornerstone of the U.S. Capitol**, a testament to the ideals of truth, liberty, and accountability. That document is now missing—a chilling metaphor for how far we've strayed from those ideals. Let this be a lesson to the courts: when justice is delayed, ignored, or denied, the people remember, and **history holds the judiciary accountable for whether it stood for liberty or looked the other way**.

**This country must protect its most vulnerable—our children.** And yet, this court is not only turning its back on them, but **setting a dangerous precedent** that tells future generations the Constitution can be ignored when it's inconvenient. But if the courts will not honor and protect the rights of our children, **then parents will.** And the courts may not like what that awakening looks like. There are far more people in this country than there are government officials. We will not sit idly by while justice is dismantled. Let us not repeat the mistakes of history by allowing unchecked power to silence truth. **We the People are still here—and we are watching.**

The people are growing tired—tired of injustice, tired of being silenced, and tired of watching courts shield state actors and private individuals



who violate constitutional rights under the pretense of legal immunity. We are on the verge of returning to the "old days," when courts routinely **refused to hold powerful individuals accountable** simply because they held titles like "lawyer" or "government official." In those days, **conspiracies between state actors and private individuals** to deprive citizens of their rights were met with silence or complicity from the bench. But history also teaches us what happens to courts that abandon their duty: they lose legitimacy, and with that, public trust. The Constitution does not bend to privilege or position — it binds **everyone**, especially those acting under color of law. If federal courts today repeat the mistakes of the past, ignoring blatant wrongdoing in the name of preserving institutional image, **they risk becoming the very kind of courts our Constitution was designed to guard against.**

The plaintiff is not going away. He fully intends to appeal this ruling and will exhaust every legal remedy available in both state and federal courts to ensure that justice is served — not only for himself, but for his minor child, V.S., whose constitutional rights have been trampled without consequence. The plaintiff has also prepared a new, independent complaint on behalf of V.S. against all named defendants. There is no ongoing state case involving V.S., no parallel custody or support proceeding, and no jurisdictional or procedural basis for this federal court — or any other — to ignore or dismiss that forthcoming action under doctrines such as *Younger v. Harris*, 401 U.S. 37 (1971), or *Rooker Feldman*, 263 U.S. 413 (1923). The new complaint will stand on its own, supported by evidence, clear violations of federal law, and the

 CamScanner

rights of a child who has been used as a pawn in a legal system that claims to protect families but has instead caused irreparable harm.

The plaintiff is undeterred by this court's 27-page opinion, which failed to confront the real constitutional injuries at hand and instead hid behind procedural shields that were never meant to protect misconduct, perjury, or unlawful interference by state actors and their private conspirators. Opinions that avoid confronting perjury, vacated orders, or violations of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the Parental Kidnapping Prevention Act (PKPA), and 42 U.S.C. § 1983 are not binding precedents of justice—they are bureaucratic shields, and the people see through them.

The Plaintiff intends to use the 27 pages to start a fire in his fire pit out back of his house for him and his wife to enjoy because not only is it useless, it is gibberish4.

This case—and many others like it—is being watched by hundreds of thousands of parents across the United States on social media and within advocacy networks. These are parents, grandparents, and families who have seen firsthand how the system designed to protect children has been weaponized against them. There are more of us than there are government officials, court officers, and agency lawyers combined—and we are tired. Tired of lies in courtrooms. Tired of being silenced by doctrines that were never meant to protect lawbreaking. Tired of watching children grow up without parents because of fraud, retaliation, and unchecked abuse of

 CamScanner

power. We are not going to stand by while federal courts treat constitutional violations in family court settings as mere "domestic disputes." We are not confused—we are enraged.

The Constitution does not vanish at the courthouse door just because the case involves family. When a child is taken for over 30 months based on a fraudulent order, when a DOR attorney knowingly steps outside the boundaries of lawful authority, and when court officers lie or withhold evidence, the issue is no longer family law—it is civil rights. If the courts fail to uphold these rights, they risk becoming complicit in their erosion. History has shown that when courts turn a blind eye to injustice—when they refuse to enforce the constitutional protections guaranteed to the people—the people themselves are forced to respond. We are at that threshold once again. This case is a warning, and a promise: we are watching, we are organizing, and we will not stop until accountability is restored and justice is delivered—for every parent, and most importantly, for every child.

Prayer for Relief

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

Reconsider its ruling dismissing the Plaintiff's complaint;

Acknowledge the constitutional violations presented;

Allow the Plaintiff to proceed with his claims under federal law;

Grant any further relief that this Court deems just and proper.

Respectfully submitted,

Michael Sean Speight

5/30/25

I hereby swear under the pains and penalty of perjury that all defendants were served through ecf, and Amanda Kaelblein was served through IPS on May 30, 2025

Michael Sean Speight

5/30/25